# CHARLESTON.

STATE *ex rel.* LAMB *v.* BOARD OF BALLOT COMMISSIONERS WETZEL COUNTY.

STATE *ex rel.* NEWMEYER *v.* BOARD OF BALLOT COMMISSIONERS WETZEL COUNTY.

STATE *ex rel.* SANTEE *v.* BOARD OF BALLOT COMMISSIONERS WETZEL COUNTY.

STATE *ex rel.* ANKROM *v.* BOARD OF BALLOT COMMISSIONERS WETZEL COUNTY.

STATE *ex rel.* COSGRAY *v.* BOARD OF BALLOT COMMISSIONERS WETZEL COUNTY.

Submitted October 9, 1918.    Decided October 22, 1918.

1. ELECTIONS—*Primary Elections—Nomination—Name on Official Ballot.*

To entitle one, claiming to be the nominee of one of the principal political parties as a candidate for a county or district office, to have his name printed as such on the official ballot to be voted for at the general election, it must appear that his name was printed on the official primary election ballot, that he received more votes in the primary election than any other candidate for such nomination, and that he has complied with the provisions of the primary election act by filing with the clerk of the circuit court a certificate of his candidacy and the sheriff's receipt, showing payment of his assessment, and that he has also filed with the clerk of the county court the affidavit required by the corrupt practices act showing the amount of expenses incurred about his nomination; or else it must appear that he has been selected by the county executive committee of his political party, in the manner provided by the primary election act, to break a tie or to fill a vacancy which has occurred in a nomination made at the primary election. (p. 754).

2. SAME—*Knowledge to Fill Vacancy—Power of County Executive Committee.*

The county executive committee of a political party is authorized to nominate a candidate only to fill a vacancy which has occurred in a nomination regularly made at a primary election. (p. 756).

Applications for mandamus by the State, on the relation of T. D. Lamb, of Joseph Newmeyer, of J. W. Santee, of Z.

W. Ankrom, and of Baker Cosgray, against the Board of
Ballot Commissioners of Wetzel County.

*Writ denied.*

*Thos. P. Jacobs,* for relators.

WILLIAMS, JUDGE:

The relators in these cases severally applied to this court
for writs of mandamus to compel Frank B. Smith, Clerk of
the Circuit Court of Wetzel County, William L. Newman
and Frank Wells Clark, composing the Board of Ballot Com-
missioners of said county, to print their names on the official
ballot to be voted at the ensuing election, as nominees of the
republican party for the following offices: T. D. Lamb, for
Superintendent of Free Schools of said county; J. W. Santee
and Joseph Newmeyer, for House of Delegates, (Wetzel coun-
ty being entitled to elect two) ; Baker Cosgray, for Commis-
sioner of the County Court; and Z. W. Ankrom, for Presi-
dent of the Board of Education of Magnolia District in said
county.

Alternative writs in each case were issued on the 3rd of
October, returnable October 9th, 1918, and have been re-
turned duly executed upon the respondents. No return or
answer is made and no appearance to the writs.

To entitle them to the writ relators must show a clear, legal
right to the same, it must appear that they are the regular
nominees of the republican party for the respective offices
designated and that they were nominated in the manner pro-
vided by the primary election act, or that they have been
selected in the manner provided by the act to fill vacancies
which have occurred in the nominations since the primary
election.

In the case of T. D. Lamb, the alternative writ alleges there
were two candidates for the office of county superintendent
of free schools on the republican ticket each of whom re-
ceived the same number of votes in the primary election, as
was shown by the certificate of the board of canvassers, that
the republican county executive committee broke the tie by
drawing lots in the manner provided by law, and said Lamb
was drawn as the candidate, and that this fact was certified

to the board of ballot commissioners by the republican county executive committee, and that a majority of the board of ballot commissioners refused and continues to refuse to place his name on the official ballot to be voted at the general election as the republican candidate for said office.

In the cases of J. W. Santee and Joseph Newmeyer, candidates for the House of Delegates, the alternative writs aver there were eight candidates voted for in the primary election for the House of Delegates on the republican ticket, each receiving the same number of votes as shown by the certificate of the board of canvassers; that the republican county executive committee, in the manner required by law, broke the tie and that Even Williams was drawn as one of the candidates of the republican party and J. W. McIntire as the other; that each of the candidates so drawn resigned, and the republican county executive committee thereupon appointed J. W. Santee and Joseph Newmeyer to fill the vacancies thus occasioned.

In the case of Baker Cosgray, candidate for the office of Commissioner of the County Court, the alternative writ does not aver how many candidates were voted for in the primary election for said nomination on the republican ticket, but simply avers that the said Cosgray was nominated, he having received a majority of the votes as found and certified by the county court of said county, sitting as a canvassing board.

In the case of Z. W. Ankrom, who claims to be the nominee of the republican party for the office of President of the Board of Education of Magnolia District in said county, the petition alleges there was no republican candidate voted for at the primary election for said office, and consequently a vacancy was created in said nomination, and that the republican county executive committee of Wetzel county appointed the said Ankrom to fill said vacancy and certified the fact to the board of ballot commissioners.

It is averred in all the writs in the foregoing cases that a majority of the board of ballot commissioners refused and continues to refuse to place the names of the several relators upon the official ballot to be voted at the ensuing general election. In none of the foregoing cases has the relator

shown a compliance with the law, so as to entitle him to the relief prayed for.   To entitle a person to have his name printed on the official ballot as the nominee of one of the principal political parties, he must show that he has complied with certain prerequisite provisions of the primary election act, entitling him to the nomination.   These provisions are found in Sections 8, 10, 21 and 26 of the Act.   If he is a candidate for an office to be filled by the voters of a single county, or a subdivision thereof, he must file a certificate of his candidacy with the clerk of the circuit court of the county, acknowledged before some officer authorized to administer oaths, as required by section 8; section 10 provides that "the name of no candidate shall be placed on the primary ballot of his party unless he has paid all assessments required by this act", and section 21 fixes the amounts of the assessments to be paid by the candidates for the respective offices, and provides for the payment of the same, in case he is a candidate for an office to be filled by the voters of a county or a subdivision thereof, to the sheriff of the county, and for the taking of the sheriff's receipt in duplicate therefor, "one of which shall be filed with the chairman of the board of ballot commissioners."   The clerk of the circuit court, by section 32 of chapter 3 of the Code, is made the chairman of the board of ballot commissioners.   The purpose in requiring the candidate to file a certificate of his candidacy and the sheriff's receipt, showing payment of his assessment, with said clerk is to inform him and through him the other members of the board of ballot commissioners that the candidate has complied with those requirements of the primary election statute. The statute nowhere provides for bringing these matters to the attention of the county court.   Hence, it is not supposed to know whether the candidate has complied with them or not.   Its certificate as a canvassing board, showing the number of votes cast in the primary election for the various candidates, does not in any manner relate to or affect these requirements.   The board of ballot commissioners is not authorized, and would have no right to print the name of a person as the candidate of a political party for an office to be filled by the voters of a county or a subdivision thereof, on

the official ballot to be voted at the general election, who is not shown to have been nominated by such party in the manner provided by the primary election statute, and no one can be voted for, as the candidate of a political party, in a primary election, except in case of certain offices therein excepted and not here material, who has failed to file a certificate of his candidacy and a receipt of the sheriff showing payment of his assessment, with the clerk of the circuit court, and has caused his name to be printed on the official ballot as a candidate for such nomination. *State ex rel. Lewis v. Board of Ballot Commissioners of Wood County,* decided at the present term. Moreover, section 26 of the primary election statute expressly provides as follows: "No candidate shall be considered a nominee nor his name be placed on the regular election ballot by the ballot commissioners until said candidate has filed the affidavit required by the corrupt practices act as to the amount of expenses as provided by said act." These are material and mandatory provisions, and compliance with them is indispensable to a nomination as the candidate of one of the principal political parties for an office, not expressly excepted by the act from their operation. The assessments are intended to help defray the expenses of conducting the primary election, and the printing of the candidates names on the primary ballots is for the purpose of informing the voters who the candidates for the various nominations are, in order that they may be fully informed in respect thereto and the better prepared to choose amongst them. In none of the foregoing cases does it appear that any one of these provisions of the act has been complied with.

There is an additional reason why relator Ankrom should be denied the writ. He avers that no one was voted for for the office of President of the Board of Education of Magnolia District and claims to have been nominated by the republican county executive committee to fill the vacancy thereby occasioned. Section 20 of the aforesaid act authorizes the executive committees of a political party to nominate a candidate, "if any vacancy occurs in the nominees of any party after the holding of any primary election." Otherwise it is not authorized to make nominations. Before there can be

82 W. Va.

a vacancy in the nomination there must have first been a nomination. The executive committee of a political party is not given the right to make nominations in the first instance; it is authorized only to break ties where they exist as the result of two or more candidates in a primary election for the same nomination receiving the same number of votes, and to fill vacancies in nominations, occurring after a nomination has been made in the primary election. No one having been voted for in the primary election for the office of president of the board of education of Magnolia district, of course no vacancy in such nomination could have occurred, and hence the executive committee was powerless to make the nomination.

These observations lead to a denial of the writ in each of the foregoing cases.                    *Writ denied.*