Benjamin M. McLyman, Atty. Gen. *ex rel. vs.* Timothy E. Molloy *et al.*, Board of Canvassers and Registration of the City of Providence.

Same *v.* Same.

Same *v.* Same.

NOVEMBER 2, 1932.

Present:   Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

Per Curiam.   Petitions for writs of certiorari and injunction.   In each of the above cases the persons on whose relation the petition was brought are seeking to restrain the Board of Canvassers and Registration of the city of Provi-

dence from placing upon the official ballot, under the emblem of the Democratic party, the names of certain candidates for city offices to be voted for at the general election to be held November 8, 1932.

Said persons and the relators are opposing candidates, some for the office of alderman and others for the office of councilman for said city. Each group have duly filed nomination papers and their names will appear upon said ballot. The question is whether the names of the persons who are the real respondents may also be legally placed upon said ballot under the emblem of the Democratic party. Said persons will hereinafter be referred to as the respondents.

In each case the relators and the respondents were opposing candidates in their ward caucus. In each case the respondents were declared by the caucus officials to be the nominees of the caucus. In each instance, protest having been made, said board decided and declared that the caucus, by reason of irregularities, was null and void and that no person or persons were nominated at the caucus. Thereafter the State Democratic Committee, assuming to act under authority of Chapter 1515, P. L. 1930—known as the Caucus Act—filed with said board the names of the respondents as the candidates of the Democratic party. Said board decided and determined that said names be printed upon the official ballot under the emblem of the Democratic party as candidates of said party for the offices for which they were respectively candidates for nomination at their respective ward caucuses. Citation was issued to said board which has without order certified its records to us.

At the hearing before us it was argued on behalf of the board that, the caucuses having failed to make nominations, the State Democratic Committee was authorized by Section 2 of Chapter 1515 to make and file party nominations. On behalf of said committee it was argued that, if said chapter provided no authority to said committee to act, it had authority, under the circumstances, at common law to make and file party nominations.

Is a state committee of a political party authorized by said section 2 to file a list of party candidates where it has been duly declared that a caucus is null and void and that by reason thereof no candidates were nominated?

The pertinent provisions of said section are as follows: "The state committee of a political party . . . may make rules not inconsistent with law for the guidance and control of the several town and city committees, and may act in their stead in case of failure to make nominations, or to hold caucuses, or to fill vacancies. . . . The state committee, or the executive committee acting under such delegated authority, may file party nominations for any public office, whether in town, city, ward, voting district, senatorial district, representative district, or congressional district, where the town, city, ward, voting district, senatorial district, representative district, or congressional district committee, or other party committee authorized to act, has failed or neglected to file such nominations with the proper officials. Said state committee or the executive committee, shall also have like authority in filling vacancies where party conventions have failed or neglected to file proper nominations. Said committees shall also fill vacancies caused by withdrawals or for any other cause where a time limit is involved, in case of failure on the part of the regular party committee to act at the proper time. The state committee, or the executive committee, may appoint a new town or city, or other committee, to act in such cases, where time is sufficient to enable them to do so within statutory limits, if the regular committee fails to perform the usual duties of such committee. Any other contingency that arises under the provisions of the statutes where there is a failure on the part of the party committee to act, may be met by vote of the state committee, or the executive committee of a political party."

A careful reading of said section discloses that the right of a state committee to act in any of the circumstances—except one—mentioned in the section is predicated upon the fact

that the proper committee has failed in its duty in neglecting to do an act which said committee might legally perform and that the state committee is merely authorized to do the act which the proper committee could and should have done.

The first sentence of said section, in addition to other provisions not pertinent, which constitute the exception above mentioned, provides that: "The state committee . . . may act in their stead in case of failure to make nominations, or to hold caucuses or to fill vacancies." Section 11 of said act sets forth the nominations which the local committees may make. Said section contains a provision as follows: "The respective ward, district and town committee of each political party in each town or city shall file its list of the names of the delegates, officers, committees or nominees to be voted upon at any caucus." The vacancies which said committees may fill are vacancies in the local committees and vacancies in caucus officials. See Sections 5 and 15 of said act.

In regard to the second sentence it is sufficient to say that the local committees are by said act vested with no authority, at least when no nominations have been made by a caucus, to select candidates to be voted for at an election or even to file with the proper officials the results of a caucus. The results of a caucus together with the ballots cast must be forwarded to the proper official by a caucus official and not by the local committee. See Section 16 of said act.

The third sentence authorizes a state committee to fill vacancies "where party conventions have failed or neglected to file proper nominations." This provision does not apply to a caucus.

As to the fourth sentence, it is sufficient to say that it does not appear that the regular party committee had any authority which they failed to exercise.

The final sentence is: "Any other contingency that arises under the provisions of the statutes where there is a failure on the part of the party committee to act may be met by vote of the state committee, or the executive committee of a

political party." Here again the state committee is authorized to act only when the regular committee has failed to act, and as we said above the act confers no authority upon the subordinate committee to select candidates to be voted for at an election, except perhaps when the caucus has assumed to confer upon such committee authority to fill vacancies which may occur in the list of candidates nominated at the caucus. The latter contingency, covering the cases of death or resignation of caucus or convention nominees, has been provided for by Section 19, Chapter 11, G. L. 1923.

In the cases before us the local committees acted in so far as they could or should have acted. In accordance with Section 9 of said act the city committee called the caucuses. As provided by Section 11 of said act, ward committees filed their lists of nominees "to be voted upon" at the respective caucuses; and the caucuses were held.

We find nothing in the statute giving the ward committee, or the city committee, any authority to make nominations or file nominations where a caucus held for the purpose of making such nominations has been declared void. Hence as there was no failure or neglect upon the part of either of these committees to act, the state committee could not "act in their stead."

As was said in *Kelly* v. *Whiteley*, 27 R. I. 356, "the caucus which was in its calling and inception entirely lawful, failed by misconduct, in performance of its function to exercise the privilege given to the party by law."

It is apparent, from Section 19, Chapter 11, G. L. 1923, that it was the intention of the legislature that a state political committee should name a candidate only after the withdrawal or death of a caucus or convention nominee. Had it been the intention to enlarge the scope of the authority of the state committees in this particular, we think the legislature would have either amended said section or made clear provision in the Caucus Act for such extended authority.

Our construction of the statutes involved is amply supported by text writers and numerous decisions. In 9 R. C. L. 1089, the rule is stated as follows: "An interesting question as to what constitutes a vacancy which may be filled by the party committees, sometimes arises. Ordinarily the conclusion depends on the particular wording of the statute. Where the law grants authority to the party committee to act 'if for any reason after a nomination as party candidate' for a state office 'a vacancy has been made' or 'shall occur,' the right of the committee to act where an omission to nominate at the primary occurs the conditions of the statute are not fulfilled and there is no vacancy which the committee is authorized to fill. And the rule is the same where the power of the committee is confined to 'vacancies occurring after the holding of any primary election, occasioned by death, withdrawal or change of residence, or from any other cause.' . . . To justify a nomination in pursuance of the power to fill vacancies there must be a vacancy within the meaning of the statute or the rule conferring the power, and the vacancy must have occurred in a nomination duly made and have resulted from a given cause." To the same effect see 20 C. J. 126, 127; *State* v. *Karnes*, 97 S. E. (W. Va.) 302; *Pratt* v. *Secretary of State*, 141 Ia. 196; *Stewart* v. *Polley*, 137 N. W. 565; *Healey* v. *Wipf*, 117 N. W. 521; *Corser* v. *Scott*, 91 N. W. 1101.

In *People* v. *Dem. Gen. Com.*, 164 N. Y. 335, 58 N. E. 124, the following language appears: "The dominant idea pervading these statutes is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus given effect, whether it be in accord with the wishes of the leaders of his party or not; and that thus shall be put in effective operation in the primaries that fundamental principle of Democracy which makes the will of an unfettered majority controlling. In other words the scheme is to permit the voters to construct the organization from the

bottom upward instead of permitting the leaders to construct it from the top downward."

The construction of the Caucus Act contended for by the respondents would, in effect, leave the making of party nominations by caucus optional with committees of political parties. Under such construction, the refusal or failure of political committees to make party nominations by caucus would, as to all nominations, cause vacancies which might be filled by the state committee.

It was argued on behalf of the state committee that it had a common law right to select candidates whenever, for any cause, there was a failure to select candidates by caucus. This argument would have some force if the subject were not regulated by statute and the legislature had not by the adoption of Section 19 of Chapter 11, G. L. 1923. specified the instances in which a state committee may fill vacancies; namely, in case of death or withdrawal.

Said chapter 11 makes provision for the steps to be taken to get names of candidates placed upon the official ballot. No provision is made for placing the name of a candidate upon the official ballot at the instance of any party committee, except in case of death or withdrawal as provided by Section 19 of said chapter.

We order that our prerogative writ of injunction issue in each case in accordance with the prayer of each petition.

*Philip S. Knauer, Frederick Torelli, Dooley, Jackvony, Curran & Dunn*, for petitioners.

*John C. Mahoney, City Solicitor, John T. Walsh, Francis D. McManus, Francis J. McCabe, Edward J. McQuade, Assistant City Solicitors*, for respondent Board.

*Patrick P. Curran, Joseph C. Cawley*, for other respondents.