131 P.2d 278

**STATE ex rel. VAN SCHOYCK v. BOARD OF COUNTY COM'RS OF LINCOLN COUNTY et al.**

**No. 4747.**

Supreme Court of New Mexico.

Nov. 10, 1942.

Whatley & Garland, of Las Cruces, for appellant.

M. A. Threet, Dist. Atty., of Las Cruces, for appellees.

SADLER, Justice.

Two questions are presented for decision. The first is whether, no declaration of candidacy having been filed, a nomination may be accomplished under the primary election law, L.1938, Sp.Sess., c. 2, by writing in the name of the voter's choice underneath the name of the office where it

appears on the official ballot used in the primary election. The second question, to be resolved only in the event the first draws a negative answer, is whether a vacancy exists under section 17 of the primary election law to be filled by an appropriate party committee, where there was no candidate and, hence, no nomination at the primary.

The office involved is that of county clerk and the case comes up from Lincoln County. Mrs. Wayne Van Schoyck as relator asked the district court of that county to compel its board of commissioners, sitting as the county canvassing board, to meet, canvass and certify her name as the republican nominee for the office of county clerk by virtue of forty-two votes cast for her as such nominee by writing in her name on the ballot at said primary election which were duly certified by the judges and clerks thereof; or, in the event the respondent board could not lawfully be required so to do that the county clerk, also made a respondent, be required to accept and file a certificate of nomination issued to relator by the vacancy committee of the Republican County Central Committee as the nominee of said party and to accept the fee required of candidates for that office and to print the relator's name on the official ballot in the general election to be held on November 3, 1942.

The respondent board filed an answer challenging relator's right to the relief asked against it and against the individual members thereof. The county clerk, as a respondent, filed a separate answer, likewise challenging relator's right to the relief sought against him. He admitted that on or about October 1, 1942, more than two weeks following the primary election, the relator tendered to him seventy-two dollars accompanied by a purported certificate of nomination given relator by said vacancy committee, which check the respondent refused to receive and which certificate he refused to file. After hearing, the court made the following findings of fact and conclusions of law, to-wit:

"1. That W. W. Gallacher, Corbin Hester and Manuel Corona are the County Commissioners of Lincoln County, New Mexico, and as such are the Board of Canvassers of said county, and charged by law with the duty of canvassing the returns of the direct Primary Election held on September 12, 1942 for the nomination of candidates for the several national, state and county offices voted for at said direct Primary Election on said day, including the office of County Clerk.

"2. That no person filed a declaration of candidacy for the office of County Clerk of Lincoln County, New Mexico on the Republican ticket, and that the official Republican ballot for said direct primary election in said county did not contain the printed name of a candidate for the office of County Clerk of said county, but that the name of the said Mrs. Wayne Van Schoyck was written in on the said Republican ballot under the designation 'for

County Clerk' by forty-two Republican voters who voted the Republican ticket at said primary election, and that opposite the name of the said Mrs. Wayne Van Schoyck so written in on said ballot under said designation, such electors placed a square and therein marked an 'X', indicating their vote for the said Mrs. Wayne Van Schoyck as a candidate for County Clerk on the Republican ticket.

"3. And the Court further finds that the Board of Commissioners of Lincoln County, New Mexico, sitting as a Canvassing Board, failed and refused to canvass the write-in votes of said Relator.

"4. The Court further finds that Felix Ramey is the duly elected, qualified and acting County Clerk of Lincoln County, New Mexico.

"5. The Court further finds that no other candidate for County Clerk on the Republican ticket was voted for at such election, and the Relator received all votes cast at said Primary Election by writing in the name of said Relator.

"6. That since said Primary Election the Republican Party met in Lincoln County, New Mexico and attempted to nominate the said Relator as the Republican candidate for County Clerk of Lincoln County, New Mexico, to fill a purported vacancy.

"7. That thereafter a purported certificate of nomination of the said Mrs. Wayne Van Schoyck accompanied by the sum of $72.00, being the fee required by law to be paid by candidates participating in the Primary Election for the office of County Clerk, was tendered to Felix Ramey as County Clerk of Lincoln County, New Mexico, for filing and was by him refused.

"Based on the Findings of Fact aforesaid, the Court makes as its

"Conclusions of Law:

"I. That under the Primary law of the State of New Mexico a write-in vote is not permissible, and the Board of County Commissioners sitting as a Canvassing Board was not required or permitted under said Primary law to canvass said write-in votes.

"II. That under the Primary law of the State of New Mexico no vacancy existed in the office of County Clerk on the Republican ticket of Lincoln County, New Mexico, in the list of candidates entitled to representation on the official ballot at the next ensuing General Election, and that the action taken by the Republican Party Committee in attempting to nominate the Relator as a candidate for County Clerk on the Republican ticket to fill a purported vacancy is null and void and of no effect."

The trial court thereupon entered its judgment dissolving an alternative writ of mandamus theretofore issued and dismissing the relator's action. This appeal followed.

██ As to the first question, we are all agreed that the write-in method of nominating a candidate for public office is unavailable under our primary law, either

to a political party participating in the primary or to any member thereof thus seeking to place himself on the official ballot as his party's nominee in the general election. This conclusion arises from a consideration of the Act as a whole and we are quite satisfied with its correctness. Many of its provisions suggest, while others compel, such a view.

The Act in question is known as Chapter 2 of New Mexico Session Laws of 1938, adopted at a Special Session of the Thirteenth State Legislature, approved September 1, 1938. Section 1 of the Act declares that it shall be known and may be cited as the "Primary Election Code." Section 2 provides that all candidates for elective office shall be nominated by political parties to which the Act applies at a primary election and that "the candidates of the political parties for the offices to which this act applies shall not be otherwise selected or nominated".

The last sentence of Section 5 of the Act reads: "Nomination of candidates to fill vacancies and nomination of candidates to all offices to which this act does not apply and nomination of candidates for all offices by all political parties not coming under the provisions of this act shall be made as now is or as may hereafter be provided by law."

Section 7 provides: "A primary shall be held in each county in this state on the second Saturday in September of each even numbered year at which the qualified registered electors of each political party participating in such primary shall select by secret ballot the candidates of each such party for all offices to which this act applies."

Section 8 imposes the duty on the Governor to issue a proclamation and file same with the Secretary of State on the first Monday in July of each even numbered year calling for the primary election to be held in each county and precinct in the state on the second Saturday in September of such even numbered year, giving a list of the offices for which each political party participating shall nominate candidates, and further provides that "such proclamation shall also contain the date on or before which the declarations and nominating petitions of candidates for such nominations shall be filed, and the offices wherein such declarations and petitions shall be filed, *in order to entitle the candidate for such nomination to have his name printed upon the official ballot of his party at such primary.*" (Emphasis ours.)

Section 9 provides that any person desiring to become a candidate of any political party participating in the primary for any office shall at least thirty (30) days before the date of the primary file a declaration of candidacy, the form of which is set forth in said section, followed by the requirement that the candidate must, at the time of filing such declaration, file therewith a petition for nomination signed by qualified electors who are members of his political party, the form of which is likewise prescribed. The minimum number

of signatures of qualified electors necessary on a nominating petition varies according to whether the office sought is a precinct office, county office, district office or a state office. For county offices the number requisite is twenty-five and for state offices the number is five hundred. If the office sought is a county office, the declaration and nominating petitions must be filed with the county clerk and, if a state office, with the Secretary of State.

Under the provisions of Section 10, the person seeking his party's designation as nominee for a particular office, must accompany the declaration of candidacy and nominating petitions by a filing fee amounting to 3% of the first year's salary applicable to said office. The fees thus collected are to be remitted to the county treasurer where they arise from candidacies for nominations for precinct and county offices and legislative offices comprising but one county. If they arise from candidacies for a district office extending over more than one county they are to be apportioned in a manner specified in the Act and remitted to the county treasurer of each county within the district. If they arise from candidacies for state offices they are to be divided between the various counties of the state as provided by the Act and remitted to the county treasurer of each county. The funds thus raised are to be used for defraying the expenses of the primary election in the various counties. If they be insufficient to do so, any balance required is to be paid by the various counties as in the case of general elections and any

money in excess of the amount required for holding a given primary election is to remain in the "Primary Election Fund" for use in holding subsequent primary elections as the same may be needed.

The mandatory duty is imposed upon the county clerk and Secretary of State by this section to receive and file the declaration and nominating petitions of a candidate where the same are accompanied by the required filing fee "if such declarant is eligible to hold the office for which he seeks nomination under the constitution and laws of the State of New Mexico."

Section 13 of the act provides that primary elections shall be held and conducted and the voters shall vote therein and returns made in the same manner as by law provided for general elections "except as herein otherwise provided or inconsistent with the provisions of this act; and such primary elections shall in all respects conform to the laws governing general elections, except as herein otherwise provided".

In Section 15, it is provided that the person receiving the highest number of votes of his party at such primary for any office shall be the nominee of his party for such office, and it is made the duty of the officials charged by law with printing the ballots for the ensuing general election to place the name of the person so receiving the highest number of votes of his party in said primary upon the official ballot to be used in the general election, "as candidates of his or their party for the of-

fice for which such person or persons were candidates for nomination in the primary".

Section 18 makes provision for paying the expenses of the primary in any county where the fund arising from filing fees is insufficient to meet the same. The deficiency is to be budgeted and paid by the county in the same manner as the expenses of a general election are budgeted and paid.

Under the provisions of Section 23 "all candidates participating therein" are called upon to prepare and file an itemized statement, subscribed and sworn to by the candidate, showing a full and complete record of his expenditures of money and other things of value, which were intended to aid the success of the candidate in the election. These statements are to be filed with the officer with whom the candidate's nominating petition has been filed.

Section 28 gives to "any candidate of any party for nomination to any office to which this Act applies", the right to have the ballots cast in a questioned precinct recounted and the result in such precinct redeclared and recertified, upon making application for such recount within the time specified in said section and subject to certain other conditions therein named.

A review of the foregoing provisions of the controlling statute leaves us quite satisfied that it neither contemplates nor permits the write-in method of nominating candidates. That such a method defeats one of the main objects of a primary election, viz., that of seasonably submitting the names of candidates for consideration by the qualified electors, there can be no doubt. And as against majority selection, the desired result in all elections, it is plain that a very small minority through last minute activity could foist on a political party as its nominee for a given office, a candidate so obviously unfit and wanting in qualifications, that the mere filing of a declaration of candidacy by him in the primary would have drawn forth others to insure his defeat. This is not to intimate that the present relator is lacking in qualifications in any manner but merely to suggest ill results to follow if her construction of the statute be adopted.

One of the opening sections of the Act, Section 2, defines the legislative policy by declaring that candidates of political parties for the offices to which it applies "shall not be otherwise selected or nominated". Of course, if that language were literally applied, vacancies in nominations could not be filled as authorized by Section 17 of the Act. Nevertheless, any other method of selecting candidates represents an exception carved out of the all embracing prohibition contained in Section 2. Hence, the language relied upon to create it is to be strictly, although not unreasonably, construed. 59 C.J. 1092; 25 R.C.L. 983.

▮ The mandatory duty imposed on the Governor to issue his proclamation calling the primary election by Section 8 contains language persuasive of the conclusion we reach. The proclamation must specify the second Saturday in September

in each even numbered year as the date for the primary election; the date on or before which declarations and nominating petitions must be filed; and the offices wherein they must be filed "in order to entitle *the candidate for such nomination* to have his name printed upon the official ballot of his party at such primary." (Emphasis ours.) Certainly, this language suggests the legislative thought that one seeking a nomination must have his name printed on the official ballot and leaves the implication· that failure to have it so printed denies candidacy for the nomination. The only way the candidate can place his name on the official ballot is by filing a declaration supported by proper nominating petitions.

█ This is followed by the language of Section 9 providing that any person "desiring to become a candidate" must file his declaration and petitions at least thirty days before the date set for the primary. Then follows the mandatory requirement of Section 10 that the declaration and petitions must be accompanied by a fee amounting to 3% of the first year's salary attached to the office sought. The fund thus raised is to defray the expenses of the primary election or do so as far as it will go. If relator's contention be correct the write-in candidate would escape payment of this fee altogether. True, she tendered the proper fee in asking that respondents be compelled to canvass the write-in votes cast and certify her as nominee but the statute provides for the fee only where a declaration is filed. Relator filed none.

Furthermore, this section imposes a duty on the proper officials to receive and file the declaration and nominating petitions only in the event "such declarant is eligible to hold the office for which he seeks nomination under the constitution and laws of the State of New Mexico." This provision undoubtedly is to avoid the confusion and complications arising where ineligible candidates appear on the ballot. If, for instance, in the case at bar the relator were herself not a qualified elector, were a nonresident, or should be seeking a third successive term to the office of county clerk, a result prohibited by the constitution, the county clerk or secretary of state upon ascertaining these facts should and would decline to receive and file the declaration. This wholesome purpose would be circumvented by permitting a write-in method of making nominations. It is no answer to say that, if so nominated, the name of the nominee could be kept off the official ballot in the general election or denied the office, if elected. It is to avoid just such complications and to assure a majority selection of nominees that the condition of filing declarations is imposed.

In Section 15 it is directed that those charged with the duty of printing the official ballots for the general election shall place thereon only the names of those receiving the highest number of votes "as candidates of his or their party for the office for which such person or persons *were candidates for nomination in the primary.*" How can this language be said

to embrace the relator? She was not a candidate for nomination for any office in the primary. To become such, under mandatory provisions of the act, she must have filed a declaration of candidacy supported by nominating petitions. This she failed to do.

In addition, the provisions of Section 23 requiring the filing of sworn and itemized expense accounts incurred in the primary are directed only to the "candidates participating therein". The candidate must show a full and complete record of his expenditures of money and other things of value which were intended to aid the success of the candidate in the primary election. No provision is made for the filing of such statements by others than those who have become candidates for nominations in the manner prescribed by the Act. This unquestionably, for the reason that the legislature did not contemplate candidacies of any other kind.

Similarly, the right to have a recount of the ballots of any precinct for error or fraud, as provided in Section 28, is limited by express language to "any candidate of any party for nomination to any office to which this Act applies". This cannot apply to one claiming the nomination as a result of write-in votes cast, since if actively seeking the nomination in this fashion, it is a flagrant effort to circumvent and defeat the objects and purposes of the primary law, and for this reason not to be countenanced; and, if the result of the well intentioned, even though misguided efforts of friends, it is unavailing because

the subject of this kindliness was not himself a "candidate of any party for nomination to any office".

There is no need to go further. The Act abounds with requirements and provisions demonstrating beyond peradventure of doubt that it was never the intention of the legislature that a candidate could be nominated at a primary election by the write-in method of voting. Relator places great reliance on the language of Section 13 directing that such elections shall be held and conducted and that voters shall vote therein as by law provided for general elections. She reminds us that the write-in method of voting is permissible at the general election. 1929 Comp. § 41-312; N. M.St.1941, § 56-313. It is to be noted, however, that by the express language of said section the machinery of the general election law is not to be assimilated where otherwise provided by the Primary Election Code or where inconsistent therewith. As already shown, the claimed right to nominate a candidate by the write-in method of voting is denied by the plain import of numerous provisions of the Act and is inconsistent with the whole plan and purpose of the primary method of selecting candidates of political parties in a primary election.

The following decisions, all of them cases involving efforts to secure nomination by the write-in method at a primary election, support the conclusion we have reached on this phase of the case. In re Primary Ballots, 33 Nev. 125, 126 P. 643; State ex rel. Lewis v. Board of Ballot

Com'rs of Wood County, 82 W.Va. 645, 96 S.E. 1050; State ex rel. Hott v. Ewers, 106 W.Va. 18, 144 S.E. 578.

██ In order to meet the doubt about the legality of a nomination through write-in votes cast in the primary, the vacancy committee of relator's political party selected her as its nominee for the office of county clerk. Accordingly, she now presents and argues the alternative proposition that, if not entitled to be placed on the official ballot for the general election by reason of the first contention, she is so entitled by virtue of her selection as aforesaid to fill the vacancy in the list of candidates of her party resulting from the fact that there was no nomination for the office in question. We now consider this contention. It is based on the provisions of Section 17 of the Act, reading:

"Section 17. If after a primary election for any cause there shall be a vacancy in the list of candidates of a political party entitled to representation on the official ballot necessary to fill all the offices provided for by law at the ensuing general election, such vacancy may be filled by the political party committee of the state or county, as the case may be, by filing the name of its candidate for such office within twenty days after such primary with the officer with whom nominating petitions are to be filed, and when so filed, the name shall be placed upon the official ballot for the ensuing general election as the party's candidate for such office. Any vacancy thereafter occurring may be filled in like man-

ner by the party committee at any time before the official ballots are printed. If a vacancy occur after the ballots are printed, the name of the person so selected as a candidate to fill such vacancy may be placed on said ballot by pasting the printed name of such candidate so selected and filed over the name of the candidate whose vacancy he fills on the official ballot."

On this contention, as well as the first, the trial court ruled against the relator and we are persuaded it was correct in so doing. The respondents urge the vacancy contemplated by the statute is one in a nomination already made; that the statute presupposes a nomination in the primary election which, subsequent thereto, becomes vacant through death, resignation or removal from the county or state as the case may be. Whereas, the relator argues that the language of the statute is broad enough to cover the case of a vacancy resulting from default in having a candidate run in the primary and, hence, no nomination therein. The weight of reason and authority, however, stand arrayed against the relator's position. In 29 C.J.S. 126, § 93 under topic "Elections", the author of the text speaks on this subject, as follows:

"Where a statute prescribes an exclusive mode of making nominations, but contains no provision for filling vacancies occurring after nominations have been made, such vacancies cannot be filled except in the manner prescribed for making original nominations. However, provision for the filling of vacancies, usually by a party committee, is commonly made either by

statute or by party rules which are either recognized by statute or not prohibited thereby. To justify a nomination in pursuance of the power to fill vacancies, there must be a vacancy within the meaning of *the statute or the rule conferring the power; and although there exists authority to the contrary, the vacancy must, usually, have occurred in a nomination duly made,* must have resulted from a given cause, if so declared by statute or by rule, and the body assuming to fill the vacancy must be duly authorized to do so, and be duly constituted." (Emphasis ours.)

The first words of the section support the view that the vacancy contemplated is one arising on events occurring subsequent to the primary. Note the language, "if after a primary election for any cause there shall be a vacancy", etc. Now, where there is no candidate in the primary for a given office, the vacancy in the list of candidates for that office exists as well before as after the primary. It is the failure to qualify for candidacy in the primary by filing declaration, nominating petitions and paying the fee, as we have just held, that creates this vacancy, a fact which becomes known and fixed thirty days before the primary election.

We think the legislature has employed the verb "be" in the phrase "shall be" in the sense of "happen" or "occur". One of the definitions given of this substantive verb by Webster's New International Dictionary is "to take place; to occur; happen; as, the concert *was* last night; when and where will the conference *be*? In oth-

er words, in exactly the same sense in which the words "occur" and "occurring" appearing later in the section are employed. The context supports this conclusion. If it be correct, and we think it is, the distinction sought to be made by relator's counsel between our statute and those construed in some of the decisions cited and relied upon by respondents, is without merit.

We think the word "candidates" appearing in the phrase "list of candidates" in this section, is synonymous with the word "nominees". This is necessarily so if, as we hold, there can be no candidates of any political party arising from the primary save through the filing of a declaration and nominating petitions and payment of the prescribed fee.

It is to be observed, too, that the Act acquires no fee from the candidate supplied by a party committee to fill a vacancy. Since the law contemplates that the filing fees paid by the candidates participating in the primary shall pay the expenses of the election, this is a strange omission unless, as we think was the case, the legislature understood a fee already had been paid by the nominee whose place was being filled by the vacancy committee. It seems unlikely that the legislature intended to forgive the fee in behalf of a candidate thus chosen and thereby diminish the fund admittedly of doubtful sufficiency designed to defray expenses of the election.

We may notice judicially that one of the chief reasons for adopting the pri-

mary system of making nominations was to take the matter out of the hands of party conventions and committees and give it directly into the hands of the qualified electors of the parties participating therein. This recognized aim could easily be circumvented and defeated if relator's construction of the statute in this connection should be adopted. A political party whose leaders were so disposed might easily discourage the filing of candidacies in the primary as to all or the more important offices. Having thus occasioned a "vacancy", the appropriate party committee, following the primary, could meet and select candidates to oppose those already selected by the other party or parties in the primary. Knowing who the opposing candidates were, the committee selection could be made after taking into consideration every factor, geographical and otherwise, calculated to poll the largest vote for such candidate in the general election.

Thus the mandatory provisions of the primary law could be ignored, its obvious purpose defeated and the party seeking in good faith to comply with it, penalized. In the face of its positive declaration that candidates of the political parties for the offices to which the Act applies shall be nominated at a primary election and "shall not be otherwise selected or nominated", a dual system of nominations would be sanctioned—one at a primary, the other by 'a party committee. Remembering that selection by a party committee, at best, is an exception carved out of the prohibition in Section 2, just referred to, as already held in disposing of relator's first contention, the language relied on to create it is to be strictly construed. However, resort to strict construction is not required to arrive at the conclusion we reach.

An abundance of well reasoned decisions arising under statutes containing language of similar import to that found in ours supports our view that the vacancy contemplated by the legislature in authorizing a party committee to fill it is one occurring after the primary in a nomination made at the primary. District Party Committee of Republican Party v. Ryan, 152 Kan. 509, 106 P.2d 261; State ex rel. Chamberlain v. Tyler et al., as Board of Com'rs of Volusia County, 100 Fla. 1112, 130 So. 721; Stewart v. Polley, Secretary of State, 30 S.D. 54, 137 N.W. 565; McLyman, Attorney General, v. Molloy, 53 R.I. 4, 162 A. 849; State ex rel. Pratt v. Haywood, Secretary of State, 141 Iowa 196, 119 N.W. 620; Gorser v. Scott, County Auditor, 87 Minn. 313, 91 N.W. 1101; State ex rel. Lamb v. Board of Ballot Com'rs of Wetzel County, 82 W.Va. 752, 97 S.E. 284; State ex rel. Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302; State ex rel. Hitchcock v. Till, 50 S.D. 346, 210 N.W. 157.

It follows from what we have said that the judgment of the trial court dissolving the alternative writ of mandamus theretofore issued and dismissing the complaint is correct and should be affirmed.

It is so ordered.

BRICE, C. J., and COMPTON and TAYLOR, District Judges, concur.

BICKLEY, Justice (dissenting).

At the conference immediately preceding the judgment of this court, I gave my assent to the majority view that under our primary law a write-in vote is not permissible and the Board of County Commissioners sitting as a canvassing board is not required under such primary law to canvass write-in votes.

Upon further research and reflection, I conclude that I was wrong in so doing. I reach this conclusion upon the following considerations.

The primary law, which is Chapter 2, Laws 1938, section 13 thereof, says: "Such primary election shall be *held,* the voters shall *vote* therein, the *method of voting* shall be followed, the *votes counted and canvassed,* and the returns made in the same manner as by law provided for general elections except as herein otherwise provided or inconsistent with the provisions of this act; and such primary elections shall in all respects conform to the laws governing general elections, except as herein otherwise provided. *All* provisions of law governing general elections in this State not in conflict herewith, are hereby made applicable to and shall govern primary elections." (Emphasis supplied.)

The first thing to be noted is that the language quoted indicates by both general language and specific references to various steps in holding an election, an intention to make the laws governing general elections not in conflict with the primary law, applicable to the holding of primary elections.

Subsection ninth of Section 41-306, 1929 Code, provides that the ballot for the general election shall be printed in substantially the form therein set out. In said section is contained specifications of instructions to the voter, among which is: "If you wish to vote for a person whose name is *not printed on the ballot,* write his name on the blank line under the designation of the office in any column and make a cross in the first ☐ to the right of the name that you write in."

Section 41-311, 1929 Code, as amended by Chap. 147, Laws 1935, § 28, which gives instructions to voters, contains the following: "6. If you wish to vote for a person whose name is not printed on the ballot, write his name on the blank line under the designation of the office in any column and make a cross in the first ☐ to the right of the name that you write in."

Thus is manifest a solicitude that every elector be given an opportunity to express his choice of a person to hold office and such choice is not limited to those whose names are printed on the ballot. At the 1939 session of the Legislature, which followed shortly after the adoption of the primary election code in 1938, there was enacted Chapter 152 relating to registration for elections, the conduct of elections, etc. Section one thereof provides:

"The word 'election' shall be construed to mean and apply to all primary elections, general elections, special elections and municipal elections."

Section 38 thereof provides that: "No person whose party affiliation is not shown

on said affidavit of registration as herein provided shall be permitted to vote at any primary election and no person at any primary election shall be permitted to receive a ballot of any party other than that so designated on his affidavit of registration as herein provided. The provisions of this section shall be mandatory."

Then follows section 38-a which declares that no person who has been a candidate on any party ticket for nomination shall be a candidate for any office at the next succeeding general election under the party emblem or designation of any other political party. These provisions show that the Legislature in the enactment of Chapter 152 had in mind the primary election law. At the same session, there was enacted Chapter 153, which amended certain sections of Chapter 147 of the New Mexico Session Laws of 1935 relating to the conduct of elections. This chapter is apparently a companion statute to said Chapter 152 and since said Chapter 152 had defined "election" to mean and apply to primary elections, it is reasonable to suppose that the Legislature had the primary election law in mind in enacting said Chapter 153. It is to be noted that Section 4 of said Chapter amends section 29 of Chapter 147, New Mexico Session Laws 1935, relating to "voting" but it did not amend section 28 of said Chapter 147, pertaining to instructions to voters, and it is reasonable to suppose that if the 1939 Legislature believed that said section 28 was not applicable to primary elections, they would have amended that section also.

The Supreme Court of California in Edwards v. Jordan, 183 Cal. 791, 192 P. 856, 857, had before it the question as to whether the California primary law permitted a write-in vote. They held that it did so permit saying:

"The fundamental idea of the system is to give to every elector affiliated with any political party the power and opportunity to directly participate in the nomination of the candidates of such party by voting for whomsoever he desires for any nomination by the party, and this, as shown by the provisions of the act, entirely regardless of whether the name of his choice is printed on the ballot as the result of nominating petitions having been filed for him at the candidate's own instance or at the instance of a group of his advocates. This purpose is fully shown by the provisions for a blank for the writing in by the voter of a name not printed on the ballot."

Every established practice and custom which tends to impair in any degree the citizen's right of suffrage subverts the principles of representative government and undermines the foundations of democracy.

It is a common saying that ours is a government by parties, that is to say, our government is conducted by the representatives of some political party. The citizens voice in making and administering the laws is expressed through the party ballot. Hence, to preserve his sovereign right to an equal share in government, he must be assured an equal voice in making his party ballot. This privilege is vital. It

is the initial point of all administration. It is here that government begins, and if there be a failure here, there will be a failure throughout. The naming of men upon a party ticket is the naming of the men who will make and enforce the laws. It not only settles the policy of the party—it determines the character of the government. In view of these accepted principles, we should not impute to the Legislature an intention to deprive electors affiliated with any political party of the power and opportunity to directly participate in the nomination of the candidates of such party by voting for whomsoever they desire for any nomination by the party. The direction in section 11 that the official direct primary ballot shall contain the words: "To vote for a person, mark a cross (x) in the ☐ at the right of the name of each person for whom you desire to vote," is consistent with the direction to the voter in section 28, Chapter 147, Laws 1935:

"If you wish to vote for a person whose name is not printed on the ballot, write his name on the blank line under the designation of the office in any column and make a cross in the first ☐ to the right of the name that you write in."

See also State v. Ayers, 1940, 111 Mont. 1, 105 P.2d 686.

It is interesting to note that California, since the decision in Edwards v. Jordan, supra, has not departed from its system of permitting write-in votes except that it has been recently provided that a person whose name has been written in upon any ballot or ballots for any office at any primary election cannot have his name placed upon the election ballot as a candidate at the ensuing general election unless to fill a vacancy or unless at such primary election he shall have received for such office votes equal in number to one per cent of all votes cast for such office at the last preceding State election. See California Session Laws 1933, pp. 358, 367. This shows merely that after more than a quarter of a century, California has not found the write-in method inconsistent with the privileges accorded candidates of having their names printed on the primary election ballot by filing their nomination papers. With this system prevailing in sister states and our primary election statute importing into it all of the provisions of the election code not in conflict therewith, it is suggested that we should not strive to find conflicts when there is no good reason for so doing, but which, on the other hand, impair the fundamental idea of the primary election code.

The circumstance that fees are required to be paid by candidates for nominations who file nomination papers in order to get their names printed on the primary ballot is of little aid in construing the statute, and surely of little aid to respondent.

It is undoubtedly an advantage to a candidate for election to an office as well as a candidate for a nomination to have his name printed on either ballot. In one case, he has to pay for this advantage and in the other he does not. In the instance where the candidate is required

to pay the fee, the advantage over the write-in is doubtless worth the money. The primary is a step in the selection of public officers and it is not apparent why the cost of holding the primary should not be borne at the public expense, as well as the election. Primary elections are essentially for the public welfare and not for the benefit of candidates alone. At most, the requirement for payment of fees by candidates who have filed nomination papers is a revenue measure only. Fees are exacted to aid in defraying the expenses of holding the primary election. In the recent primary election, nominees for three federal and ten state offices were to be chosen on each party ticket. On the democratic ballot there was a total of 33 candidates for these thirteen offices who filed nominations papers. Suppose there had been only five candidates who paid fees and filed. Would this be any reason for not holding a primary? I think not. Section 18 of the Primary Election Code provides that:

"In the event the fund by this Act created be insufficient to pay the expenses of the primary in any county, the deficiency shall be budgeted and paid by the county in the same manner as the expenses of a general election are budgeted and paid," etc.

It must be borne in mind that the branch of the case now being considered is distinct from the other, which deals with the existence of vacancies "in the list of candidates of a political party entitled to representation on the official ballot necessary to fill all the offices * * * at the ensuing general election."

There is no provision in the Primary Election Code authorizing a political party committee to fill a vacancy among candidates for the party nomination caused by death, ineligibility, withdrawal, or otherwise. It is only vacancies in the list of party candidates as ascertained "after a primary election" that can be filled by a political party committee by virtue of section 17 of the Primary Election Law.

To borrow the excellent argument of the Wisconsin Supreme Court in State v. Frear, 144 Wis. 79, 128 N.W. 1068, 140 Am. St.Rep. 992, this is logical, because the party committee is the executive arm of the party and very properly would represent it in an emergency where it developed at the close of the primary election that it had no candidate. But before the primary, there is no party nominee. True, there may be several persons whose names have been properly put forward by nomination papers and who are thus entitled to have their names on the primary ballot, but these nominating signers have no executive committee recognized by law to act for them. It must frequently happen that these persons seeking nomination before a primary represent factions in the party, and in all probability, one at least represents a faction whose object it is to overthrow the faction which has control of the party and is represented by the political party committee. Now, it would be absurd to suppose that a political party committee would be authorized

to fill a vacancy occurring in the leadership of the party faction which was endeavoring to defeat and supplant the faction to which the political party committee belonged. It is logical and sensible to enact that the political party committee shall act for the party as a whole, because it represents the party. It is neither logical nor sensible to enact that a party committee shall act for a faction of a party or a mere group of party members because it does not represent the faction or group. Indeed, it may be fighting such faction or group with all its power. The result of this situation under our primary election law, is that if no person has manifested a desire to become a candidate for a particular office, of any political party participating in the primary, by filing a declaration of candidacy at least 30 days before the date of the primary, or if a person has expressed a desire to become such a candidate, at least 30 days before the date of the primary and has after filing such declaration either died or withdrawn, or it develops that he is ineligible to hold the office, then the political party with which such declared candidate was affiliated, would be without a candidate at the primary election unless electors can write in the name of their choice for a party candidate.

The situation outlined should prompt such a construction of the statute as will support the opportunity for exercise of important rights and privileges of electors and political party adherents.

Only a few words are appropriate with reference to cases cited by the majority in support of their views on this branch of the case.

As to the Nevada case, I think the original decision and opinion which was unanimous was the correct one and the opinion in support thereof the best reasoned, notwithstanding the argument of Sweeney and Talbot, JJ., who receded therefrom on rehearing upon considerations of doubtful value in view of the provisions of our statutes.

The two West Virginia cases are of no value on account of differences in the statutes involved.

If the primary election Code does not permit a write-in vote, then under the facts of the case at bar, after the primary there was a vacancy in the list of candidates of the Republican party, to go on the official ballot necessary to fill all the offices provided for by law at the ensuing general election, and such vacancy could be filled by the Republican party committee.

It appears that no person filed a declaration of candidacy for the office of county clerk of Lincoln County on the Republican primary ticket and the official Republican ballot for said primary election did not contain the printed name of a candidate for the office of county clerk. Section 17 of the primary code provides:

"If after a primary election *for any cause* there shall be a vacancy in the *list of candidates* of a political party entitled to representation on the official ballot necessary to fill *all* the offices provided for by law at the ensuing general election, such

vacancy may be filled by the political party committee of the state or county, as the case may be, by filing the name of its candidate for such office within twenty days after such primary with the officer with whom nominating petitions are to be filed, and when so filed, the name shall be placed upon the official ballot for the ensuing general election as the party's candidate for such office." (Emphasis supplied.)

What is "the list of candidates?"

It is plain that the phrase does not relate to a list of those who were candidates for nomination for a particular office in the primary. Such a list of candidates for nomination is of no significance because "after a primary election" there cannot ordinarily be more than one candidate of a political party for election to a particular office. (The exception being where more than one is to be elected, representatives in Congress for example.)

The phrase "list of candidates" cannot be appropriately applied to *one* candidate. So I conclude that "list of candidates" plainly means "list of candidates * * * necessary to fill all the offices provided for by law at the ensuing general election."

Section 8 of the Primary Election Code makes it the duty of the Governor to proclaim a list of the offices for which each political party shall nominate candidates.

After the primary election the Republican party had a list of candidates for all county offices in Lincoln County except the office of county clerk and superintendent of schools (assuming that the write-in vote for Mrs. Van Schoych was of no effect.)

The Republican party had a list of candidates upon which a gap or empty space appeared, namely, candidate for county clerk. This was a vacancy in the *list of candidates* of that party.

The lexicographers define vacancy as specifically "a vacant or empty space." The Century Dictionary defines it thus: "An empty or unfilled post, position or office."

Ballentine's Law Dictionary thus defines "Vacancy in Office": "The condition of an office which is unoccupied and without an incumbent who has a lawful right to continue therein until the happening of some future event. As a rule, when a new office is created, a vacancy at once exists. Hence there can be a vacancy in an existing office without an incumbent, although the office has never been filled." Citing 22 R.C.L. 437.

There is no difference in the application of the word when applied to a post, position or office. The Supreme Court of Tennessee in Williams v. Mabry, 1940, 141 S.W.2d 481, 484, said:

" 'There is a vacancy in every instance in which there is an office without an incumbent. Every office without an officer is vacant. Therefore every new office created must, of necessity, be vacant from the time of its creation until it is filled by appointment or election.'

"This statement was quoted approvingly by the Court of Appeals of New York in People v. Hylan, 212 N.Y. 236, 106 N.E. 89, 91, Ann.Cas.1915D, 122, preceded by the following excerpt from an opinion by the Supreme Court of Indiana in Stocking v. State, 7 Ind. 326: 'There is no technical nor peculiar meaning to the word "vacant," as used in the Constitution. It means empty, unoccupied; as applied to an office, without an incumbent. There is no basis for the distinction urged that it applies only to offices vacated by death, resignation, or otherwise. An existing office without an incumbent is vacant, whether it be a new or an old one. A new house is as vacant as one tenanted for years which was abandoned yesterday.' "

See also State v. Board of Election Com'rs, 196 Ind. 472, 149 N.E. 69.

"The term 'vacancy' means an empty space, a place unfilled, and, when applied to an office, it means the state of being destitute of an incumbent, or a want of the proper officer to officiate in such office. But in neither case has it any reference whatever to any former time or to any former condition of the place or office. If a place or office is empty now, there is a vacancy, regardless of whether it has once been filled or has always been empty. And so of an office. Richardson v. Young, 122 Tenn. 471, [562], 125 S.W. 664, 686." 43 Words & Phrases, Perm. Ed., p. 606.

In Heney v. Jordan, 179 Cal. 24, 31, 175 P. 402, 405, the court says: "It is clear that the term 'vacancy,' as used in this section, refers to any case where, from any cause, there is no nominee of the party for an office."

Section 17 of the primary election code is very broad. It says: "If after a primary election for *any cause* there shall be a vacancy in the list of candidates of a political party * * * to fill all the offices provided for by law at the ensuing general election, such vacancy may be filled by the political party committee," etc.

As applied to the case at bar, this means that (eliminating the write-in vote) after the primary election in Lincoln County, the Republican party had no nominee of the party for county clerk. That place on the list of candidates of the Republican party was vacant, regardless of whether it had once been filled or had always been empty.

Some of the *causes* of vacancies "in the list of candidates of a political party * * * necessary to fill all the offices provided for by law" may be as follows: Death, withdrawal or ineligibility. Cases of ineligibility have arisen where the candidate is not a resident, where he fails to file his statement of expenses, where he has been guilty of violating the corrupt practices act, or has been convicted of a felony, and there are doubtless other instances. In Halteman v. Grogan, 233 Ky. 51, 24 S. W.2d 921, there were two candidates for an office and one failed to file his expense account, and the other was discovered to be a nonresident. The court decided:

"Where it develops after primary election that none of candidates for various reasons are entitled to certificate of nomination, vacancy exists, authorizing governing authority of party under Ky.St. § 1550-5 to name nominee."

It is not necessary that the *cause* of the vacancy occur, happen, or take place "after a primary". It is enough that after the primary it develops that there exists a vacancy in the list of candidates of a political party, *for any cause*. A popular understanding of the word "be" according to the dictionaries is "to have existence", "to exist".

The consequences to a political party are the same whether the cause of the vacancy transpires or happens before or after the primary. If all candidates for a party nomination for a particular office die, withdraw, or are ineligible when they file nomination papers, or become so, either before or after the primary, then it "develops" or "becomes known" after the primary that the party has no candidate for that particular office, there is a vacancy in its list of candidates. The language is simple, plain and unambiguous. It is only made difficult by first making changes in the language of the opening sentence of section 17.

Cases cited from other states construing statutes different from ours, are of no value and I will not pursue an analysis of the cases cited by the majority.

For instance, the Florida statute provides: "In the event of the death, resignation or removal of any person nominated for office in a primary election, between such primary election and the ensuing general election, or if for any cause there is a vacancy in any nomination", Comp. Gen.Laws 1927, § 411, as amended by Laws 1929, c. 13761, § 14, then the vacancy may be filled in the manner delineated.

The majority having concluded that our Legislature meant to say what the Florida Legislature said, is obliged to employ substitution of words and indulge in considerable faulty statutory construction. I think our Legislature undertook to avoid the situation existing in Florida and states having similar statutes, and kept away from a delineation of the causes of vacancy or the time when the causes or the vacancy arose, and by the language employed in section 17 of the primary election code, said that if after a primary election it develops that the list of candidates of a political party shows that there is no nominee of the party for a particular office, no matter what the cause, then the vacancy may be filled by the political party committee.

If there are evils which attend the filling of vacancies by political party committee, which "exist" after a primary, caused by death, withdrawal, or ineligibility arising before the primary, such evils would attend the like process if the vacan-

cies occur or happen from the same causes arising after the primary is held.

In State v. Mitchell, 118 Fla. 513, 159 So. 775, 778, it is said: "As to the importance of parties in American Democracy, see 1 Bryce, Modern Democracies, Ch. XI where it is stated that nomination proposed by established political parties are to be regarded as a part of our governmental system, because the practice of making party nominations is as old as democracy itself, and has now become an almost indispensable feature of our constitutional elective systems, state and national."

If political parties could repair a situation where either through lack of candidates willing to file nominating papers or in event nomination papers had been filed and the candidates for nomination had died, withdrawn or were found to be ineligible, by selecting a candidate at the primary election by the write-in method, then the system formulated by the majority might not be attended with grave consequences, but if the write-in method is not permissible, and the political party committee is limited to filling vacancies which arise among candidates *nominated at a* primary, and are further limited to causes for vacancies which arise *after* the primary, then a political party's traditional and statutory powers and privileges of having a candidate at the general election for every office provided by law to be filled, are curtailed, in my opinion, beyond anything which may reasonably be found in the act.

For the foregoing reasons, I dissent.