# CHARLESTON.

PACK v. KARNES *et als.*

Submitted October 22, 1918. Decided October 29, 1918.

1. MANDAMUS—*Board of Ballot Commissioners—Discharge of Duty.*
   A citizen, tax payer and voter has such interest as entitles him to maintain mandamus to compel a board of ballot commissioners to discharge their duties lawfully in respect to the preparation of ballots for a general election. (p. 17).

2. SAME—*Ballot Commissioners—Defense to Writ.*
   The fact that a board of ballot commissioners have already made up the ballot for a general election, will constitute no defense to a writ to compel them to discharge their duties lawfully; until they have done so, in contemplation of law they have not performed them at all. (p. 18).

3. ELECTIONS—*Ballot—Resignation of Nominee—Appointment to Fill Vacancy.*
   Under the primary election law one who has not complied with all the requirements of the statute to entitle him to have his name printed on the ballot, cannot become the nominee of his party although he may have received the requisite number of votes at such primary election, and not having become such nominee, the executive committee of his party on his resignation can not lawfully appoint another as for a vacancy. (p. 18).

4. SAME—*Defective Nomination—Ballots.*
   And where there has been no lawful nomination at such primary election, the executive committee of a political party can not lawfully appoint a nominee with right to have his name placed by the ballot commissioners on the official ballot to be voted at a general Election. (p. 19).

Application by the State, on the relation of J. C. Pack, Chairman of the Republican Executive Committee of Mercer

County, against H. D. Karnes and others, constituting the Board of Ballot Commissioners, for a writ of mandamus.

*Writ granted.*

*Hugh G. Woods,* for relator.

*D. M. Easley,* for respondents.

MILLER, JUDGE:

The relief sought by mandamus in these cases is the same as that which petitioners endeavored to obtain by prohibition at the present term of court. We then held, in an opinion prepared by Judge POFFENBARGER, that mandamus and not prohibition was the exclusive remedy given by the statute where it was desired to control the action of a board of ballot commissioners, wherefore the present proceeding in mandamus.

The petitioner in each case sues not only in his capacity of chairman of the Republican Executive Committee of Mercer County, but also as citizen, tax payer and voter. The petition in Case No. 3741 alleges that at the primary election held August 6, 1918, The name of E. H. Thompson, who had announced himself therefor, was put on the Democratic ballot as a candidate for the nomination for the House of Delegates, along with the name of T. J. Phelps, the only other candidate for that office. It is further alleged that at said primary Thompson was voted for generally by members of his party throughout the county, but that because of his failure, as required by law, to file with the clerk of the county court at least seven days before said primary election an itemized statement, subscribed and sworn to, setting forth all his financial transactions in connection with his candidacy, and because of his failure to file such sworn statement with said clerk at any time until eight days after said primary, he was not legally nominated by his party as a candidate for the House of Delegates and was not entitled to have his name printed or placed on the official ballot to be voted on at the general election on the 5th day of November, 1918.

It is further alleged that some time after said primary election the said Thompson pretended to resign his alleged

nomination to the Democratic county executive committee, which committee pretended to accept such resignation and undertook to appoint as for a vacancy caused by such resignation the respondent James R. Shanklin as a candidate on the Democratic ticket for said office to be voted for at said general election, and that Henry Karnes, D. F. Hale and R. D. Karnes, composing the board of ballot commissioners for said county, had so placed the name of said Shanklin on said official ballot to be voted for as aforesaid.

In Case No. 3742 the petition of the same petitioner alleges that subsequent to the said primary election held on August 6, 1918, at which the said names of Thompson and Phelps were the only names printed on the official Democratic ballot as candidates for the nomination for the House of Delegates, the Democratic executive committee for said county had also undertaken to appoint as for a vacancy and as a third candidate for the House of Delegates respondent S. R. Holroyd and had also certified his appointment as such candidate to said board of ballot commissioners to be printed on the official ballot to be voted at said general election on November 5, 1918, and that said board of ballot commissioners had also placed his name on said official ballot. It is further alleged with respect to the particular appointment of said Holroyd that no vacancy had occurred in any nomination made at said primary election which the said Democratic executive committee could lawfully fill by said appointment, wherefore said pretended appointment was wholly abortive and void.

The prayer of said petitions respectively is that respondents H. D. Karnes, D. F. Hale and R. D. Karnes, composing the board of ballot commissioners of said county, be commanded by a peremptory writ of mandamus issued out of this court to omit from the official ballot to be voted on at said general election November 5, 1918, the names respectively of said Shanklin and Holroyd.

Shanklin and Holroyd alone have appeared to resist the award of said writs. Each in his particular case has demurred to and moved the court to quash the petition and also made return thereto. The grounds of demurrer and

motion to quash summarized are: First, that the petitioner shows no right as chairman of the Republican county executive committee, or as a citizen, tax payer and voter, to the writs prayed for; second, that mandamus will not lie to undo what has already been done; third, that the official ballot having been made up and completed, compliance with the writ by the board of ballot commissioners would now be functus officio in so far at least as they undertook to omit or remove the name of any candidate already placed upon the official ballot. In their returns respondents admit the facts substantially as alleged in the petititons, but of course deny the legal effect thereof as pleaded.

The only additional facts averred and relied on by respondents in their returns is that the board of ballot commissioners before the filing of the petitions had made up, printed and distributed a large number of ballots to be mailed to voters of said county then in the military service of the United States, and that a large number of these ballots had already been voted by such voters and registered back to the proper authorities for the purpose of being counted at the general election, which ballots contained the names of respondents.

The first ground of demurrer and motion to quash, we think is not well founded. We need not say for the purposes of the present cases whether in his capacity of chairman of a political committee petitioner would be entitled to the writ of mandamus, for he sues also as citizen, tax payer and voter. If in these capacities he is entitled to be heard in opposition to the action of the ballot commissioners in making up an illegal ballot for the general election, he may maintain these proceedings. If a citizen, tax payer and voter is not thus entitled to be heard, who would be the proper party to move the court to action and compel ballot commissioners to perform properly their official duties? The statute gives the right, but does not in terms give it to any particular person or political body. Certainly it must be in some one, and who more properly than a voter? If one regularly and legally nominated is omitted from the ballot, on showing compliance with the law on his part he may by mandamus require the

ballot commissioners to perform their duty to put his name on the official ballot, though this would call for a reconvening of the board to discharge their duty lawfully. *Frantz* v. *County Court,* 69 W. Va. 734; *State ex rel. Heironimus* v. *Town of Davis,* 76 W. Va. 587; *State ex rel. Lamb* v. *Board of Ballot Commissioners,* 82 W. Va. 752.

But can the board of ballot commissioners be compelled to undo what according to the admitted facts they have undertaken to do unlawfully? We think there can be no doubt of the power of the court to control their action. They have no judicial discretion in the premises. At the time the writs were awarded they still had time to make up and print the ballots in accordance with law. Until they have performed their duties lawfully, in contemplation of law they have not performed them at all. Mandamus lies to compel election and other ministerial officers to perform legally their official duties. *Bogges* v. *Buxton,* 67 W. Va. 679; *Rider* v. *County Court,* 74 W. Va. 712; *State ex rel. Heironimus* v. *Town of Davis, supra; Frantz* v. *County Court, supra.*

On the third ground of demurrer and motion to quash, if it be true that the board of ballot commissioners have already printed and distributed ballots to be voted by voters in the military service, which have been voted and returned by such voters, we do not think that fact constitutes any justification for keeping the names of candidates not legally nominated for office on the official ballot. At the time the writs were awarded time yet remained in which to correct, publish and print the ballots for the general election. Even after publication and printing of the official ballots as required by §30, ch. 3 of the Code, at least ten days before the election, any error or omission in the names or descriptions of candidates nominated for public office may on affidavit be remedied by the ballot commissioners; indeed the statute makes this duty mandatory on the commissioners.

Now on the question of the right of respondents to remain on the ballot. As to Shanklin, nominated by the executive committee in place of Thompson, resigned, we have just decided that one who has not prior to the primary election filed

with the clerk of the county court the affidavit required by the corrupt practice act, can not become the nominee of his political party, and that unless regularly nominated, the executive committee of his party can not on his resignation fill his place by nominating another as for a vacancy. *State ex rel. Lewis* v. *Board of Ballot Commissioners,* 82 W. Va. 645. It follows that if Thompson was not lawfully nominated at the primary election, the nominee of the executive committee, Shanklin, has no right by virtue of the action of said committee to have his name placed on the ballot. Thompson not having been legally nominated, the executive committee was without authority to nominate another in his stead, for there was no vacancy in the nomination when no nomination was legally made.

And respecting respondent Holroyd. Not having certified his candidacy to the clerk of the county court, nor paid to the sheriff his assessment, nor made the affidavit required by the corrupt practice act and had his name placed on the ballot as required by the primary election statute, he can not be said to have been nominated. And no nomination having been made in the manner provided by law, the executive committee of his party was without jurisdiction or power to nominate him or any one in his stead to a place on the official ballot prepared for the general election. Said appointment was wholly abortive and void. *State ex rel. Lamb* v. *Board of Ballot Commissioners, supra; State ex rel. Lewis* v. *Board of Ballot Commissioners, supra.*

We are clearly of opinion that the writs awarded on a former day of the present term were properly directed.

*Writ granted.*