STATE *ex rel.* JAMES KAY THOMAS *v.* WILLIAM S. WYSONG

(No. 9456)

Submitted January 15, 1943. Decided February 23, 1943.

370

*C. W. Strickling, Langdon C. Morris* and *Hawthorne D. Battle,* for relator.

*Samuel Biern,* for respondent.

LOVINS, JUDGE:

The relator by this original proceeding in mandamus, seeks induction into the office of Attorney General of the State of West Virginia. The facts are undisputed.

A vacancy occurred in the office of attorney general by reason of the resignation of Honorable C. W. Meadows, who had been elected to that office for a term commencing January 13, 1941, and ending on the Monday following the second Wednesday in January, 1945. The respondent, Honorable W. S. Wysong, was on May 22, 1942 (effective May 25, 1942), appointed to fill the vacancy thus created, to serve until the next general election and until the election and qualification of a successor. At the primary election held on August 4, 1942, relator, Honorable James Kay Thomas, was nominated on the Democratic ticket for said office to be voted for at the general election held on November 3, 1942, and received a majority of the votes cast for such office at the general election. Certificates of result were transmitted to the Governor and Secretary of State. The votes cast for the relator in all the counties were tabulated by the Governor and caused to be printed in The Charleston Gazette, a newspaper published at the seat of government of the State. The certificates of result transmitted to the Secretary of State were delivered to the Speaker of the House of Delegates on January 13, 1942, which body on the same day, after publication thereof,

declared relator to have been duly elected to the office of attorney general for the unexpired term hereinabove mentioned. Relator took and subscribed to an oath of office as such attorney general, and filed the same in the office of the secretary of state, then made demand on respondent for possession of the property and records pertaining to the office, which demand was refused.

The relator was appointed a captain in the Army of the United States on September 14, 1942, and was serving as such at the time of the general election. His appointment, being temporary, was made under the authority of H. J. 199, Public Law No. 252, Seventy-seventh Congress of the United States, the material parts thereof reading as follows:

> "During the present emergency, temporary appointments as officers in the Army of the United States may be made, under such regulations as the President may prescribe, from among qualified persons without appointing such persons in any particular component of the Army of the United States. All persons so appointed as officers shall be commissioned in the Army of the United States and may be ordered into the active military service of the United States to serve therein for such periods of time as the President may prescribe. * * *. *Provided,* That any appointment made under the provisions of this Act may be vacated at any time by the President and, if not sooner vacated, shall continue during the present emergency and six months thereafter: *Provided further,* That any person appointed as an officer in the Army of the United States under the provisions of this Act shall receive the same pay and allowances and be entitled to the same rights, privileges, and benefits as members of the Officers' Reserve Corps of the same grade and length of active service: * * *".

The relator is now, and has been since his appointment, in active service in the Army of the United States of America.

The relator seeks induction into an office to which he claims a legal right. The respondent denies that the relator

has such right by reason of the fact that relator is now an officer in the Army of the United States and is therefore ineligible to the office claimed.

If the relator has a clear legal right to the office claimed by him and from which he is illegally excluded, mandamus is the appropriate remedy to redress his wrong. *Booten v. Pinson,* 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917 A, 1244; *Griffith v. Mercer County Court,* 80 W. Va. 410, 92 S. E. 676. A person seeking induction into office must be eligible for such office in order to prevail. *Hall v. Stepp,* 105 W. Va. 486, 487, 143 S. E. 153. The relator contends that the respondent cannot raise the question of relator's right to the office of attorney general. This contention is without merit. The respondent was in possession of the office of attorney general by proper appointment, holding the same at the time of the demand made by relator, had the right to challenge the eligibility of the relator, and, if such ineligibility could be made to appear, the relator would have no right to the office. *Hall v. Stepp, supra.*

Our attention has been directed to Section 62, Title 5, U. S. C. A., reading in part as follows: "No person who holds an office the salary or annual compensation attached to which amounts to the sum of two thousand five hundred dollars shall be appointed to or hold any other office to which compensation is attached unless specially authorized thereto by law, * * *". Section 62 has no bearing on the questions here presented, the enforcement thereof being a matter for the proper officials of the United States Government. We note, however, that relator in his reply avers that he will not accept any compensation payable to the Attorney General of the State of West Virginia so long as he remains in the military service of the United States.

We are mindful of the provisions of Title 10, Section 576, U. S. C. A., wherein it is provided that, "No officer of the Army on the active list shall hold any civil office, whether by election or appointment, and every such officer who accepts or exercises the functions of a civil office shall thereby cease to be an officer of the Army, and his commission shall be thereby vacated." We are concerned with the military status of the relator only so far as it affects

his eligibility to the state office. We note that Section 576 is held to be inapplicable to officers in a volunteer army. 22 Op. Atty. Gen. 88; and likewise inapplicable to officers of the army on the retired list. *Badeau* v. *United States,* 130 U. S. 439, 32 L. Ed. 997, 9 S. Ct. 579. An army officer retired from active service was held to be eligible to an office created by a statute of the State of New York which prohibited the incumbent from holding another federal, state, or municipal office. *People* v. *Duane,* 121 N. Y. 367, 24 N. E. 845. If Section 576 were applicable to the relator in his temporary military capacity, his commission would be vacated and the questions of dual office holding, and incompatibility of offices would disappear, as his military status would end upon his acceptance of the office of attorney general.

We do not believe the question of incompatibility of offices, as defined at common law, arises in this proceeding. There is a conflict in the authorities as to what constitutes incompatibility in offices. In some jurisdictions it is held that such incompatibility exists when it is physically impossible that the duties of both offices be performed properly by the same person. *Perkins* v. *Manning* (Ariz.), 122 P. 2d 857. But the weight of authority supports the conclusion reached in the case of *Bryan* v. *Cattell,* 15 Iowa 538, wherein it is held that incompatibility rests not upon physical inability to perform the duties of both offices, but arises from the inconsistent nature of the offices and their relation to each other, rendering it improper, from considerations of public policy for one person to perform the duties of both. We adhere to the holding in *Bryan* v. *Cattell, supra.* The duties of Attorney General of the State of West Virginia and those of a commissioned officer in the Army of the United States are not inconsistent and are so divergent that no incompatibility therein will occur.

It is urged by the respondent that relator is required by Section 1, Article VII of the Constitution to reside at the seat of government during his term of office, and to keep the public records, books, and papers pertaining to his office thereat. This contention is not meritorious. It is to be noted that Section 1 of Article VII of the Constitution

relates to a future course of conduct, and in no way affects the eligibility of the relator to the office of attorney general. The question of residence and manner in which the relator may or may not perform his duties, are not before us in this proceeding.

We believe that the common law principles relating to incompatibility of offices have been supplemented but not displaced by pertinent provisions of the Constitution of this State inhibiting one person from holding more than one office at the same time.

Such inhibitions against dual office-holding originated from considerations of public policy, and we think we may look to the public policy of this State for aid in applying and interpreting the provision which gives rise to that inhibition. The enactment of Chapter 60, Acts of the Legislature, 1941, declares the public policy of this State with reference to the status of persons holding civil offices and who enter one of the armed services of the United States. We believe that the public policy so declared in Chapter 60 affords to citizens of this State an opportunity to perform their military duties without suffering loss of an office to which they have been elected or appointed. We advert to that statute not for the purpose of adjudicating its validity but only to show the existence and declaration of such policy.

It is clear that relator's connection with the army is of transitory nature, and he will probably return to the pursuits of civil life upon the cessation of hostilities. At least his official connection with the army under his present appointment will end at the expiration of six months after the end of the present emergency. We distinguish a person holding a temporary appointment as an officer of the army, in time of war, from one who is a professional soldier and is the holder of a commission in the regular military establishment of the United States. Our holding herein is restricted to a person who is temporarily serving in one of the armed services of the United States in time of war.

There is an implied contention that the relator was elected to the office of attorney general while in the army;

that the people of the State knew that fact, and hence that is a valid reason for holding relator eligible for such office. The inevitable result of such reasoning would be to render the Constitution of this State so flexible that no right, inhibition, or authority created thereby or contained therein would have permanence. Such reasoning has no place in the determination of the meaning of a constitutional provision.

Cogent reasons may be urged to the effect that relator has been regularly nominated and elected; that he has been declared elected by the House of Delegates; that he has taken the oath of office as attorney general and, therefore, in fact is such officer, and that no questions of eligibility arises. We agree that such reasons are of great weight, but we prefer to rest our determination of the issue in this case on the question of relator's eligibility which is fairly raised on the record and which we believe cannot be ignored.

The decisive question in this case relates to the eligibility of relator to the office of attorney general, the respondent contending that relator is precluded from taking office by reason of the provisions of Section 4, Article VII of the Constitution of this State, reading in part as follows: "None of the executive officers mentioned in this article shall hold any other office during the term of his service * * *", (the attorney general being one of the executive officers so mentioned). Similar provisions are found in many, if not all, of the constitutions of the various states. Their origin may be traced to the care with which state sovereignty was guarded during the formative period of the Republic. In applying provisions of the Constitution, it is not only our duty to obey and uphold them, but it is a duty of equal importance to make such application thereof as will tend to preserve them. At this time our Nation is engaged in a war which may determine whether it will survive. A failure of the citizens of this Nation to assume and perform their military duties in this time of national stress may result in defeat and consequential disruption of our governmental system. No impediment

should be placed in the way of citizens who desire to render the necessary military service in defense of the country. To do otherwise would be sacrificing practical necessities to abstract principles.

Will the relator be the holder of another office during his term of service as attorney general? This question has arisen under the statutes and constitutions of other jurisdictions with reference to vacancies. Some authorities hold that a person entering one of the armed services as enlisted man or officer vacates a civil office formerly held by such person. *State ex rel. Cooper* v. *Roth,* 140 Ohio St. 377, 44 N. E. 2d 456; *Perkins* v. *Manning, supra; Commonwealth* v. *Smith,* 343 Pa. 446, 23 A. 2d 440; *Fekete* v. *City of East St. Louis,* 315 Ill. 58, 145 N. E. 692, 40 A. L. R. 650. In other jurisdictions the contrary is held. *State ex rel. McGaughey* v. *Grayston,* 349 Mo. 700, 163 S. W. 2d 335; *McCoy* v. *Board of Supervisors of Los Angeles County,* 18 Cal. 2d 193, 114 P. 2d 569; *In re Advisory Opinion to the Governor,* (Fla.), 8 So. 2d 26, 140 A. L. R. 1481; *In re Advisory Opinion to the Governor,* (Fla.), 9 So. 172, 140 A. L. R. 1492; *Gullickson* v. *Mitchell,* (Mont.), 126 P. 2d 1106; *City of Lynchburg* v. *Suttenfield,* 177 Va. 212, 13 S. E. 2d 323.

We do not overlook the fact that the authorities just cited specifically deal with the question of vacancy in civil offices theretofore held and claimed to be vacated by reason of the entry of the incumbent in the military service, and that they do not specifically treat as to the eligibility of a citizen to office. But the principles of law therein announced are logically related to the question of eligibility to office. The differences in related constitutional provisions of other states and those of this State are not sufficient to prevent the application of those legal principles to the instant case. We are therefore persuaded that the cases of *State ex rel. McGaughey* v. *Grayston, supra; McCoy* v. *Board, supra; In re Advisory Opinions to Governor, supra; Gullickson* v. *Mitchell, supra; Lynchburg* v. *Suttenfield, supra,* lay down the true rule to be applied in times of national emergency with respect to citizen soldiers of the Republic.

In our own jurisdiction a liberal view with respect to eligibility to office has been adopted as appears from the following: "The right of a citizen to hold office is the general rule; ineligibility the exception. Courts are hesitant to take action resulting in deprivation of the privilege to hold office, except under clear and explicit constitutional or statutory requirement." *Isaacs v. Ballot Commissioners*, 122 W. Va. 703, 12 S. E. 2d 510. Having regard to the exigencies of war and the consequent military service required of a large number of our citizens, we are inclined to broaden the rule and narrow the exception when applied to the facts here present.

Applying the rule announced in *Isaacs v. Commissioners, supra,* the constitutional requirement which would render relator ineligible should be clear and explicit. We would hesitate to impute to the framers of our Constitution an intent to deprive citizens of the emoluments and honors of a civil office on the ground that they are engaged temporarily in military service in time of war. No such result was intended or reached in the framing and adoption of our Constitution. We are cognizant that the Constitution of the State is operative in war as in peace, and we would not subtract an iota from that principle of our organic law. Moreover, no provision of the Constitution should be so absurdly construed as to penalize a citizen on account of his efforts to maintain it.

The provisions of Section 4, Article VII against dual office-holding were not meant to discourage fit and competent citizens of our State from the performance of the high and vitally necessary duties of military service in time of war, and the interdiction therein contained is inapplicable to a person holding a temporary commission during such time.

The relator, in our opinion, having shown a clear legal right to the office of attorney general, the peremptory writ is awarded.

*Writ awarded.*

Rose, Judge, concurring in result:

I agree that the relator is clearly entitled to the writ

which he seeks. My process of arriving at this conclusion, however, is not identical with, or parallel to, that expressed in the majority opinion. The distinction is, I think, of sufficient importance to justify this note.

In my judgment, the questions properly arising herein thus become very narrow and, I think, relatively simple. The relator's petition shows in him perfect title to the office of attorney general. He has the proper citizenship, residence and age; he has been regularly nominated and elected, and was so declared by the sole tribunal created by the Constitution and the statutes to make such finding and declaration. He took and filed with the proper official the required oath, and then performed the first duty incumbent upon him—he attempted to take actual possession of the attorney general's office rooms and the papers, records and other things pertaining thereto, but was resisted. These steps did not simply entitle him to *become* attorney general; they *made* him actually attorney general. The consent of his predecessor was not necessary to his succession, nor could any one questioning his title to the office make him any less attorney general by withholding possession of the office rooms, papers and furniture appurtenant thereto. The relator's showing of title to the office of attorney general is perfect.

This is not to say that such a showing cannot be assailed. In fact, such *prima facie* case may be attacked either before or after a candidate's induction into the office, provided it is done directly, and not collaterally. The statute provides explicitly that before a candidate for the office of attorney general has been declared elected, his right to the office may be contested, and provides the tribunal and proceedings for such a contest. Code, 3-9-13. Ineligibility to hold the office is expressly made a ground for such contest. Code, 3-9-2; *Halstead* v. *Rader,* 27 W. Va. 806; *Dryden* v. *Swinburn,* 15 W. Va. 234. If any disqualification for such office shall arise, or be discovered, after the candidate's induction, the statutory remedy is perfectly plain: "Any state officer holding any elective office (except the governor, any judge, or a member of the legislature of this State) may be removed from office, by

the governor, in the manner provided in the following section: (a) when disqualified from holding the office under any provision of the Constitution of this State, or any law now in force, or which may hereafter be enacted, whether such disqualification arose before or after his induction into office; * * *." Code, 6-6-5.

The proper lawful method, therefore, of raising the question here sought to be brought into controversy, whether before or after he is declared elected, is, by statute, clearly assigned to other and different tribunals. I am not overlooking the pronouncement of this Court in the case of *Hall* v. *Stepp,* 105 W. Va. 487, 143 S. E. 153, which might be construed as adverse to this position. That case, however, was in this Court on appeal and not by way of original jurisdiction. The circuit court is one of general jurisdiction, while this Court has appellate jurisdiction only, except in specified cases. We are not given any power by the Constitution or by any statute to hear originally contests over any public office, and I think it necessarily follows that we cannot do so incidentally under the guise of hearing an application for a writ of mandamus to vindicate the right of the relator to the possession of the office rooms, furniture, papers and records incidental to his office. Our constitutional jurisdiction cannot be enlarged by the subterfuge of expanding the scope of the writ of mandamus. If this election contest can be thus thrust on us, we are thereby exposed to the imposition of a like contest over any other office in the State of West Virginia. This thing has never before been done, and I prefer not to be decoyed into an unexplored domain where I am solidly convinced we cannot constitutionally go.

Further, in my judgment, not only does the relator's petition make a perfect case for the relief he asks, but also the respondent's answer wholly fails to present any defense thereto. This answer simply asserts that the relator is ineligible to be attorney general in (1) that he is a captain in the Army of the United States under an appointment by the President to be such during the President's will and pleasure, or until six months after the termina-

tion of the present war, and (2) that while he continues to be such captain it will be impossible for him to reside at the seat of government of this State, as required by the Constitution. It is, therefore, claimed that to permit him to be, or to become, attorney general would be in derogation of two provisions of the Constitution: (1) Article VII, Section 1, which provides that the attorney general and certain other executive officers "shall reside at the seat of government during their terms of office"; and (2) Section 4 of the same Article, which provides that none of the executive officers mentioned, including the attorney general, "shall hold any other office during the term of his service". But it will at once appear that neither of these constitutional provisions relates to matters precedent to becoming an executive officer, but each provides wholly for matters which they must do, or refrain from doing, while they are such. These provisions establish, not conditions of eligibility, but restriction of action after coming into office. They are, thus, matters of defeasement, not things precedent. The provision in regard to residence does not say that no person may become an executive officer of the State unless he resides at the seat of government, and the other does not say that the holder of another office cannot become an executive officer of the State. If one, who in fact is such officer should refuse to reside at the seat of government, he would, of course, be guilty of violating his constitutional duty and be subject to removal or impeachment; and if he should attempt to acquire or hold an additional office, he would certainly become subject to a like penalty. The majority opinion very correctly holds that the constitutional requirement as to residence cannot be considered at this time. The provision of the Constitution as to holding another office is of precisely the same substance and form.

I think these conclusions dispose of the whole question here involved, no matter how the relator's captaincy is to be characterized. Whether it is an office within the constitutional provision or not such office, the result is the same. If not an office, the answer is, of course, futile, and if an office it is equally insufficient, since the restrictions

mentioned in the Constitution are subsequent, not precedent. I would go no further in this case. To continue to a determination of whether relator's office is such as continued holding of it will forfeit the position of attorney general of this State, is, in my view, a mere gratuity. Considering the vast multitude of federal offices, civil as well as military, now held by citizens of this State, the question becomes of supreme importance. I do not wish to be considered as committed to any conclusion on the subject by this concurrence in the issuance of the writ in this case. I think the question is not properly involved here. Accordingly, I agree that the writ should issue, but I do not concur in the legal proposition embodied in the syllabus.