196 S.E.2d 299 (1972)
STATE ex rel. Donald Q. BOOTH and the Democratic Executive Committee of Mingo County, West Virginia
v.
The BOARD OF BALLOT COMMISSIONERS OF MINGO COUNTY et al.
No. 13238.
Supreme Court of Appeals of West Virginia.
Submitted September 27, 1972.
Decided October 10, 1972.
Opinion May 1, 1973.
*303 William L. Jacobs, Parkersburg, for relators.
Zane Grey Staker, Kermit, for respondents. *300 *301
*302 HADEN, Judge.
This is an original proceeding in mandamus by Donald Q. Booth and the Democratic Executive Committee of Mingo County, to compel the respondents, the Board of Ballot Commissioners of Mingo County and Robert J. Webb, County Clerk of Mingo County and as ex-officio member of said board, to omit the name of Donald Evans from the November 7, 1972 general election ballot for the office of Assessor of Mingo County, and to place in substitution therefor the name of Donald Q. Booth, relator, as the nominee of the Democratic Executive Committee of said county on the general election ballot as the rightful nominee of the Democratic party for that office.
On October 10, 1972, this Court by order, denied the relators the relief requested in their mandamus, and we now set forth the reasons for said denial.
There were four candidates for the office of assessor in the Democratic primary of May 9, 1972. The results of the election upon first tabulation were recorded and certified by the County Court sitting as the Board of Canvassers for Mingo County and reflected that Donald Evans received 3,051 votes and that Howard B. Chambers received 3,017 votes. The relator Booth, one of the two remaining candidates, ran third. Consistent with statutory procedure and based upon these returns and tabulations, a certificate of nomination was issued to Donald Evans on May 9, 1972, as the Democratic nominee for the office of Assessor of Mingo County. Howard B. Chambers, having received the second highest number of votes and deeming himself aggrieved, made proper and timely demand for a recount under the provisions of West Virginia Code, Chapter 3, Article 5, Sections 17 and 18 (1931), as amended, (hereinafter cited as Code, 1931, 3-5-17 and 18, as amended). These sections provide a procedure for ballot recount for candidates who believe themselves adversely affected by the preliminary *304 findings of the Board of Canvassers. Of the three losing candidates, all of whom could demand a recount under the provisions above-cited, only Chambers did.
It was Chambers' contention that poll officers in at least two precincts had allowed the casting of votes after seven-thirty o'clock in the evening, the statutory termination time for polling, and that the Board should therefore exclude and disallow all votes cast in those precincts.
Chambers' specific contention, which relators subsequently assumed for purposes of this writ, was that in precincts numbers 75 and 76, at least 75 total votes were illegally cast after 7:30 p. m. In addition, he contended that the illegal votes were commingled with the legal votes. Further, according to Chambers, there being no feasible method of separating the legal from the illegal where voting machines are used for balloting, the entire Democratic vote of both precincts should have been rejected. Relators also argue proof would establish should only one of the two precincts be found improper, the remaining uncontested votes would have been sufficient to declare Chambers as the Democratic nominee.
On May 16, 1972, the Board of Canvassers did reconvene and began the recount demanded by Chambers. On June 12, 1972 and during the progress of the recount, Howard B. Chambers departed this life. The Board of Canvassers subsequently concluded the recount June 21, 1972. The results of the previous tabulation were affirmed and the Board of Canvassers reissued a certificate of nomination to Donald Evans.
Relators assert that the Democratic Executive Committee of Mingo County, hereinafter referred to as the Committee, did not concur in the findings of the Board of Canvassers with regard to the assessor's race, and that they concluded, to the contrary, that Donald Evans did not have sufficient legal votes necessary for the nomination. It was their further conclusion that Chambers was the legal nominee. Inasmuch as Chambers was then deceased and by their conclusion, the office of assessor being vacant, the Committee, on August 24, 1972, nominated the relator, Booth, as the Democratic nominee for that office. All such action by the Committee was predicated under the provisions of Code, 1931, 3-5-19, as amended, relating to the filling of vacancies in offices to be voted upon in the general election. Under the provisions of that statutory section, if any vacancy should occur in the party nomination for office by reason of death of the nominee or other causes, such nomination may be filled and the name of the candidate certified by the executive committee of the political party for the political subdivision in which the vacancy occurs if completed within sixty-five days after the primary election. Under the color of this statute, and relying upon their independent determination that Chambers was the legally elected nominee, the Committee chose and certified Booth as their nominee to the Board of Ballot Commissioners. The request for substitution of names on the ballot and the certification was refused by the Board of Ballot Commissioners.
Predicated upon the above-mentioned actions of the Committee, both relators seek to compel the Board of Ballot Commissioners by this mandamus, to omit Evans' name from the ballot and to place thereon that of the relator, Booth, as the Democratic nominee for the office of assessor.
Upon the rule awarded August 30, 1972, and returnable before this Court on September 12, 1972, continued to September 26, 1972, and upon the pleadings, exhibits and depositions filed in this proceeding, and upon the briefs and oral arguments of counsel for the respective parties, this case was submitted for decision on September 26, 1972.
Only recently, this Court declared in Terry v. Sencindiver, 153 W.Va. 651, 171 S.E.2d 480 (1969), in the proper case *305 "[W]here it clearly appears in an election contest that persons were permitted to vote after the hour of seven-thirty o'clock in the evening, prescribed by Code, 1931, 3-1-31, as amended, as the time when the polls shall close, the votes so cast shall be illegal and void." (Emphasis supplied). Syllab. Pt. 3, Id., and "Where illegal votes have been cast and have been commingled with the valid votes received in the precinct, making it impossible to purge such illegal votes, the entire vote of the precinct must be rejected if it appears that sufficient illegal votes were cast to affect, or leave in doubt, the result of the election." Syllab. Pt. 4, Id.
Mindful of the foregoing, this Court recognized before entry of the order disposing of this case and recognizes today the gravamen of the question raised by relators concerning the conduct of the primary election in Mingo County. But as was stated in our order of October 10, 1972, the preliminary question of whether or not the relators have established a clear legal right to mandamus is determinative of the outcome of this case.
In this proceeding, relators wish to prove, if this Court permits proof to be given, the fraud proscribed by the rule of Terry v. Sencindiver, supra. From that premise the relators assert the proof of fraud will result in a declaration or a recognition by this Court that Donald Evans did not win the primary election for the office of assessor; that to the contrary the winner of the primary election was the deceased Howard B. Chambers. Further, that if this Court recognizes that Howard B. Chambers, now deceased, would have been the winner of that election, a vacancy thereby arises, the filling of which is delegated by statute, Code, 1931, 3-5-19, as amended, to the relator Executive Committee, and that the said executive committee properly filled that vacancy with the nomination of the relator Donald Q. Booth. Based upon the presumption of the foregoing, the relators assert that a duty then arises and devolves upon the Board of Ballot Commissioners to place the name of Booth as the proper candidate on the general election ballot for the office of assessor and to omit therefrom the name of Evans, the improper or losing candidate, from the ballot. The placing of the proper name on the ballot is the ultimate legal relief sought by the relators in this proceeding in mandamus.
Are the relators entitled to this character of relief in a proceeding in mandamus? In view of the past decisions of this Court relating to the use of mandamus as a vehicle to compel observance of election laws in this jurisdiction, this statement of the issue in this case is, undoubtedly, an oversimplification of the problem. The scope of mandamus, and particularly the employment of it to invoke the original jurisdiction of this Court, has been an ever-increasing phenomenon in this jurisdiction. So often litigants regard the writ as a writ of right and as a method of first and last resort to seek legal solution to any alleged wrong not litigable by an equally efficient remedy. Apparently on the premise that "For every wrong there is a remedy," litigants have sought to avail themselves of the writ in this Court. This is particularly true in election cases.
As was recently recognized by the late Judge Haymond, "The tendency in this jurisdiction is to enlarge and advance the scope of the remedy of mandamus, rather than to restrict and limit it, in order to afford the relief to which a party is entitled when there is no other adequate and complete legal remedy." Syllab. Pt. 3, State ex rel. Smoleski v. County Court, 153 W.Va. 307, 168 S.E.2d 521 (1969).
As to whether mandamus is the proper remedy to try title to a public office, the scope of the writ has not been clearly defined in this jurisdiction. State ex rel. Porter v. Bivens & Dingess, 151 W.Va. 665, 155 S.E.2d 827 (1967). Observing the assertions of the relators it is obvious that this Court in this proceeding *306 is asked inferentially, or perhaps directly, to try the title of the office of assessor and particularly that of the nominees for that office from the Democrat Party in Mingo County. Although mandamus normally lies to compel the performance of an officer's ministerial duties, the writ has apparently been expanded in this jurisdiction to compel observance of quasi-judicial duties and functions of officials as it relates to matters involving the election laws in this State. In addition to the mandamus applications permitted under Code, 1931, 53-1-1 et seq., a special or expanded writ which may be characterized as "election mandamus" is provided to persons deeming themselves aggrieved in election matters. Code, 1931, 3-1-45, as amended, provides:
"Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus .... A mandamus shall lie from the supreme court of appeals, . . . returnable before said court, to compel any official herein to do and perform legally any duty herein required of him."
This provision by its express terms applies to any legal duty devolved or imposed by Chapter 3 of the Code which, with our Constitution, constitutes the organic and subsisting legislative pronouncement creating the machinery for and governing the conduct of elections in the State of West Virginia. Early on, this Court and the membership thereof, variously constituted through the years, was confronted with the problem of delineating the scope of the remedy of mandamus while seeking to compel the judicial enforcement and observance of the election laws of this jurisdiction. The problem is particularly attenuated and magnified when the specific concern in an election is the contest of opposing candidates for an office to be selected by the electorate at a primary or general election.
The West Virginia Constitution, Article VIII, § 24 defining the powers of county courts in reference to elections provides: "They shall, in all cases of contest, judge of the election, qualification and returns of their own members, and of all county and district officers, subject to such regulations, by appeal or otherwise, as may be prescribed by law." Additionally, the people speak again of the elections in Article IV, § 11 of the Constitution: "The legislature shall prescribe the manner of conducting and making returns of elections, and of determining contested elections; ...." In the early case of Stafford v. County Court, 58 W.Va. 88, 51 S.E. 2 (1905), the respected Judge Brannon said, construing the foregoing section of the Constitution, that Article VIII, § 24:
"[M]akes the county court the sole judge of such contests. The Constitution, (article 4, § 11) says that the legislature shall prescribe the manner of determining contested elections; and in [this chapter] (Chapter 3, West Virginia Code) the legislature has given sole and exclusive jurisdiction to the county court to try contested elections for county offices, and it could not have committed it to other hands than the county court." P. 92, 51 S.E. p. 3 Id.
Accord, Evans v. Charles, 133 W.Va. 463, 472, 56 S.E.2d 880 (1949). The Evans case, supra, recognized and specifically held that a circuit court does not have original jurisdiction of an election contest, but only appellate jurisdiction, which may be invoked in the manner provided by law. The very recent decision of State ex rel. Porter v. Bivens & Dingess, supra, recognized and held that the Supreme Court of Appeals does not have original jurisdiction of an election contest, but only appellate jurisdiction. In short and in summary, Judge Caplan, speaking for the Court in State ex rel. Myers v. Garner, 148 W.Va. 92, 133 S.E.2d 82, 84 (1963), said at page 93 f. f.:
"That the jurisdiction to conduct an election contest is afforded only through constitutional or statutory provisions has *307 been succinctly stated by this Court in Daugherty v. County Court of Lincoln County, 127 W.Va. 35, 31 S.E.2d 321, in the following language: `An election contest is purely a constitutional or statutory proceeding. The common law knew no such method of testing the validity of a nomination or election. 29 C.J.S. Elections section 246.' See also Staley v. County Court of Wayne County, 137 W.Va. 431, 73 S.E.2d 827."
This view that mandamus has not been applicable to the trial of election contest and the determination of title to an office by the use of the writ is exemplified by the writings and views of Judges Caplan in State ex rel. Myers v. Garner, supra; Haymond in State ex rel. Porter v. Bivens & Dingess, supra; and Brannon in Stafford v. County Court, supra, all speaking for the majority of the Court, and particularly penetrating dissents of Haymond and Berry in State ex rel. Zickefoose v. West, 145 W.Va. 498, 511, 116 S.E.2d 398 (1960), commented upon in 63 W.Va.L.Rev. 285 (1961).
On the other hand, an apparently contrary view of the scope of the writ in election cases has been ably exposited by a number of judges of this Court over the years. Most recently, Judge Calhoun, speaking for the majority in State ex rel. Zickefoose v. West, supra, and speaking in dissent in State ex rel. Porter v. Bivens & Dingess, supra, has held to the proposition that "election mandamus" may be employed to determine the eligibility of one to hold office after declaration of his candidacy and in advance of either the nomination in the primary election or the election in the general election. Further, that such writ is available in lieu of election contest procedures prescribed in the Constitution and in Chapter 3 of the West Virginia Code, contemplated to be had in advance and subsequent to nominations in elections, and that such writ is also available in lieu of the action of quo warranto or an action in the nature of quo warranto, to be had subsequent to the election on the application of interested parties or state officers; the premise being that neither election contest nor quo warranto proceedings provide remedies equally beneficial or efficacious to that of mandamus. See also the following cases sustaining mandamus to try title to office as respects the eligibility of one to hold office decided by this Court: State ex rel. Zickefoose v. West, supra; Adams v. Londeree, 139 W.Va. 748, 83 S.E.2d 127 (1954); State ex rel. Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302 (1918).
This dichotomy of approach which has plagued the decisions of this Court, the persuasions of its judges and the approach of its litigants, should be resolved, if the problem is susceptible to solution.
While the Constitution, Article VIII, § 24, clearly declares that the election contest for county and district offices shall be tried by the county court, it also qualifies that power by subjecting it "to such regulations, by appeal or otherwise, as may be prescribed by law." (Emphasis supplied). And Article IV, § 11 says "The legislature shall prescribe the manner . . . of determining contested election; . . .", thereby indicating that the machinery for contest shall be prescribed by the Legislature. The Legislature has prescribed such machinery in Chapter 3 of the Code, and particularly as respects primary elections, Code, 1931, 3-5-20, as amended, as follows:
"Any candidate for nomination. . . to an office to be filled by the voters of this State or any political subdivision thereof . . ., may contest the primary election before the county court of the county in which any primary election procedures, practices or results may be in issue. The procedure in such case shall be the same as that governing the contest of a general election by candidates for county office.... (Emphasis supplied).
"Any such contest, . . ., of a candidate for a nomination not finally determined within ten days next preceding *308 the date of the next election after the primary, . . ., shall stand dismissed, and the person shown by the face of the returns of the primary election to be nominated for any office shall be entitled to have his name printed upon the regular ballot to be voted at the election,...." (Emphasis supplied).
In addition, Code, 1931, 3-7-6, as amended, sets forth the mechanics for contest in a primary or general election as follows:
"In all cases of contested elections, the county court shall be the judge of the election, qualifications and returns of . . . all county . . . officers. (Emphasis supplied).
"A person intending to contest the election of another to any county. . . office . . . to be filled by the voters of the county . . ., shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention, and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend. If the contestant object to the legality of the election, . . ., the notice shall set forth the facts on which such objection is founded." (Emphasis supplied).
The above statutory provisions would seem to provide effective methods of contesting elections and with other provisions, providing an appeal from a determination of county courts, sitting as election contest courts, provide a remedy to a person deeming himself aggrieved by election procedures or by conduct of the elections. It must be remembered, however, that Code, 1931, 3-1-45, as amended, provides the additional remedy of mandamus to compel performance and observance of all legal duties devolved upon any person by the entire chapter governing elections in this jurisdiction, Code, 1931, Chapter 3, as amended.
According to the cases construing this section of the Code, its effect is to enlarge the scope of the writ of mandamus making it applicable to all duties of election officers whether ministerial or judicial. Duncan v. County Court, 138 W.Va. 106, 75 S.E.2d 97 (1953); Marquis v. Thompson, 109 W.Va. 504, 155 S.E. 462 (1930). It is said that the election mandamus authorized by this section greatly broadens and liberalizes the common law right, as to its scope and procedure therein. State ex rel. Daugherty v. County Court, supra. Further, that the addition of "election mandamus" to Article 1, Chapter 3 was clearly intended to hasten the ascertainment and declaration of the results of elections, as well as the performance of other duties by election officers. Kirkpatrick v. Deegans, 53 W.Va. 275, 44 S.E. 465 (1903); Daniel v. Simms, 49 W.Va. 554, 39 S.E. 690 (1901); Morris v. Board of Canvassers, 49 W.Va. 251, 38 S.E. 500 (1901).
The argument concerning the scope and extent of the writ and its nature in election cases was alluded to and discussed extensively in the case of Boggess v. Buxton, 67 W.Va. 679, 69 S.E. 367, 21 Ann. Cas. 289 (1910). As previously suggested in the body of this opinion, some of the early cases say that the statutes broaden the scope of the writ and make it operate in such cases as a certiorari. Goff v. Board of Canvassers, 56 W.Va. 675, 49 S. E. 588 (1904); Morris v. Board of Canvassers, supra; Marcum v. Ballot Commissioners, 42 W.Va. 263, 26 S.E. 281, 36 L.R.A. 296 (1896). Other cases, to the contrary, suggested that the legislative purpose was to strip election officers of all judicial power, insofar as they previously held any, to make their acts purely ministerial by declaration of law. Daniel v. Simms, supra; Dunlevy v. County Court, 47 W.Va. 513, 35 S.E. 956 (1900). Either theory, however, sustains mandamus as a remedy against election officers.
No case, however, discovered by the writer of this opinion, has enlarged the scope of the writ of mandamus to the extent that it directly, cognitively and expressly permitted the writ to be used as a *309 trial, weighing evidence and making factual determinations and superimposing thereon conclusions of law solving a contest by the opposing persons claiming candidacy to an office. Consequently, were this case to be reviewed merely as an attempt to have an election contest in the first instance in this Court, it would have received disposition in a more facile manner than is demonstrated by this writing.
The contest as it is characterized in this opinion, is raised not directly, but indirectly, by the relators, the substance of which, if proved, will establish their right to compel the ballot commissioners to do their lawful dutyplacing the name of the proper candidate as Assessor of Mingo County on the general election ballot.
To assess the validity of the clear legal right contended for by relators and the existence of the legal duties to be compelled of the respondents, it becomes necessary to survey the duties arising and to ascertain the persons interested in the primary election as delineated by the election code. To do this, one must place the contest procedure trying the title to the office within the framework of the statute. Explicitly, one must survey to differentiate among the statutory provisions of recount, contest, and the preparation of the general election ballots.
Factually, this case began and rights, if any, accrued, and duties, if any, devolved upon the parties to this proceeding after the primary election day, during the recount, and at the time of death of Howard B. Chambers on June 12, 1972. This is the threshold which this Court must enter to make its decision in this case.
At the date of his death, Howard B. Chambers was one of four candidates in the Democratic Party seeking the nomination for the office of assessor. At the primary on May 9, the first tabulations of votes showed that he received the second highest number and had apparently lost the nomination by 34 votes. Deeming himself aggrieved, and believing that votes had been cast in certain precincts after the permissible hour of 7:30 p. m., and that these votes presumably were against him, he demanded a recount to begin to preserve his evidence. The relator, Donald Q. Booth, was also a candidate in that primary seeking the nomination for assessor. He received the third highest number of votes and he did not demand a recount. Code, 1931, 3-5-17 and 3-6-9, as amended, permit one to demand a recount of the votes cast in a primary election.
It was recognized in Brawley v. County Court, 117 W.Va. 691, 694, 187 S. E. 417, 106 A.L.R. 924 (1936), on examination of the sections of the Code above cited and Code, 1931, 3-7-6, as amended, one of the purposes of a recount is to lay the basis for a contest. A contest and a recount, however, are very distinct procedures under our election law. The county court, sitting as a Board of Canvassers in a recount for a primary election, may only do that which the statute authorizes it to do. State ex rel. Thompson v. Fry, 137 W.Va. 321, 71 S.E.2d 449 (1952). The informal conversion by opposing candidates of a recount into a quasi contest without observing the procedure for contests provided in Code, 1931, 3-7-6, as amended, was expressly disapproved in Reynolds v. Board of Canvassers, 117 W. Va. 770, 188 S.E. 229 (1936). The statutory law contemplates that an election recount and contest shall be separate proceedings. "The former must terminate and the result must be declared before the latter may commence...." Syllab. Pt. 2, Id.
Cases construing the duties of a board of canvassers say in effect that the board may only consider matters apparent on the face of the ballot and matters apparent to the personal knowledge of election officers and officials and those casting ballots. In other words, only matters patent and intrinsic to the ballot and counting procedures are proper subjects for review and determination by the board of canvassers. *310 State ex rel. Patrick v. County Court, 152 W.Va. 592, 165 S.E.2d 822 (1969); State ex rel. Ellis v. County Court, 153 W. Va. 45, 167 S.E.2d 284 (1969), holding that the board of canvassers may not consider or determine cases of fraud, intimidation or illegality in an election, the eligibility of a candidate, or irregularities discoverable in the course of a recount which can be established only by evidence extrinsic to the election returns.
On the other hand, the county court sitting as an election contest court, may take evidence, consider and make determination of matters extrinsic to the election returns. Sitting as an election court in a contest pursuant to Code, 1931, 3-5-20, as amended, and Code, 1931, 3-7-7 and 8, as amended, the election court may determine the legality of votes cast. See Terry v. Sencindiver, supra; State ex rel. Mahan v. Claypool, 97 W.Va. 670, 125 S.E. 810 (1924); Burke v. Supervisors of Monroe County, 4 W.Va. 371 (1870).
Only a candidate can demand a recount of a primary election contest. See, State ex rel. Bumgarner v. County Court, 147 W.Va. 52, 125 S.E.2d 883 (1962) (Rule recognized).
The deceased, Howard B. Chambers, did demand a recount and was in the process of receiving one at his death. As noted, the relator Booth did not demand a recount. At the conclusion of the recount on July 1, 1972, the respondent Evans was re-certified as winner of the primary election for assessor and issued a certificate of nomination for that office by the Board of Canvassers. Under Code, 1931, 3-5-20, as amended and 3-7-6, as amended, only a candidate in a primary election can demand and receive the benefits of an election contest in a primary election. See, Irons v. Fry, 129 W.Va. 284, 40 S.E.2d 340 (1946) which held that a notice of contest which does not affirmatively state that the contestant was a candidate is void. The relators in this proceeding concede in their demurrer that under our law, according to the rule of State ex rel. Jackson v. County Court, 152 W.Va. 795, 166 S.E.2d 554 (1969), a contest may only be conducted at the instance of a living person who was a candidate in the election against another living person. It is obvious that Chambers is not and was not a contestant, his death having occurred before the right to contest accrued. Relators apparently concede that Booth did not become a contestant within the meaning of the statute and he does not assert standing here as a contestant, but rather as a candidate nominated by his party's executive committee under color of an asserted vacancy in the office of assessor pursuant to Code, 1931, 3-5-19, as amended. Parenthetically, it may be observed at this point that Booth, as a candidate in the primary election, could have demanded a contest pursuant to statute within the ten-day period beginning the day after the certification of results of the recount by the board of canvassers, and ending on July 1, 1972. See, Code, 1931, 3-7-6, as amended. Recognizing that the immediate foregoing discussion is obiter, it is indulged in for the purpose of disclosing a method of statutory contest if Booth had chosen it, and a comparative available remedy to mandamus. Suffice it to say, no candidate living or dead filed or matured a right of contest under the statutes. At that point of time Evans' title to the office was perfect, subject only to be divested by the contest procedure or a quo warranto. State ex rel. Thomas v. Wysong, 125 W.Va. 369, 24 S.E. 2d 463 (1943); State ex rel. Porter v. Bivens & Dingess, supra.
This proceeding is brought by one who claims to be the lawful candidate of an executive committee and by the executive committee itself as relators against the board of ballot commissioners. Excluding consideration for the moment of the substantive matters discussed, supra, do the relators have interest or standing to bring a mandamus against the board of ballot commissioners? According to the early case of State ex rel. Pack v. Karnes, supra, and the very recent decision of State ex *311 rel. Zickefoose v. West, supra, a citizen, taxpayer and voter has such interest as entitles him to maintain a mandamus to compel the board of ballot commissioners to discharge their duties lawfully in respect to the preparation of ballots for a general election. A fortiori the committee, being the statutorily presumed representative of the citizens and voters in the Democratic Party of Mingo County, have such standing if citizens, taxpayers and voters have such standing. We so hold. Without certifying Booth as a "candidate" we hold also that he asserts sufficient standing to be a relator in mandamus against a board of ballot commissioners.
Standing, however, is not equivalent to clear legal right which is an affirmative burden placed on any relator in mandamus. This is so whether the right he seeks to vindicate is in election matters under Chapter 3 of the Code, or a right generally cognizable in mandamus under the Constitution and statutes of this State.
Believing as we do that mandamus was never intended to determine a right but only to enforce a right, we cannot accede to the contentions of the relators that evidence can be taken and proof can be made in this Court or in a circuit court of this State which would allow the trial, in the first instance, of an election contest by use of the writ of mandamus. In the case of State ex rel. Zickefoose v. West, 145 W.Va. 498, at page 511, 116 S.E.2d at page 405, construing Code, 1931, 3-1-45, as amended, the Court recognizing the limits of the expanded "election mandamus" said: "A mandamus shall be . . ., to compel any officer herein to do and perform legally any duty herein required of him." Judge Calhoun, speaking for Judge Given and himself, with Judge Browning concurring, and Judges Haymond and Berry dissenting, said:
"It seems to me the legislature intended to use, for the sake of speedy final determination in the court of last resort, the only writ available under the circumstances mandamus as a writ of review to operate as a writ of certiorari; taking cognizance of all questions arising in the case, if the matter be one in nature at all reviewable on certiorari."
Assuming this states the law in this jurisdiction, does this give one deeming himself aggrieved by the outcome of a primary election carte blanche resort to mandamus? We think not. Is the mere charge of election fraud occasioned through after-hour's voting, without proof, cognizable as a legal question on certiorari? We hold that such matters are for factual determination reviewable by writ of error or appeal or merely controllable in their method of determination by mandamus. In other words, as to mandamus, this Court could compel a lower tribunal or a county court sitting as an election contest court to decide a case properly and legally but this Court cannot tell such tribunal, having jurisdiction in the first instance, how to decide the case. State ex rel. Hager v. Oakley, W. Va., 177 S.E.2d 585, 588 (1970); Cackowska v. Knapp, Judge, 147 W.Va. 699, 701, 130 S.E.2d 204 (1963). We hold, therefore, that neither an executive committee nor one who volunteered himself as a candidate has a clear legal right to require a decision of this Court on factual matters involving election fraud; that the proof of the charge of election fraud, or like charges, involving factual determinations must be adduced before and determined by an election contest court as mandated by the West Virginia Constitution, Article VIII, § 24, supra, and Article IV, § 11, supra, and the statutes of this State, Chapter 3 of the West Virginia Code, supra, or through quo warranto or proceedings in the nature of quo warranto.
Returning for a moment to the previous discussion concerning the scope of mandamus in relation to duties placed upon persons under the election code, by Code, 1931, 3-1-45, as amended, we find no duty, discretionary or ministerial devolved upon the board of ballot commissioners by statute to hold an election contest, to make an independent inquiry into and to determine who, other than those *312 certified to it by the board of canvassers, shall be a candidate in the general election and entitled to have their names as such placed upon the ballot.
We accordingly hold that a board of ballot commissioners will not be required by mandamus to place the name of a person on a general election ballot as nominated to fill an assumed vacancy in a county office where such vacancy does not exist as a matter of law or has not been ascertained by competent authority at the time the mandamus proceeding was commenced. See, Calley v. Blake, 126 W.Va. 696, 29 S.E.2d 634 (1944).
The right to mandamus, though a remedy broad in scope and expanded and enlarged in jurisdiction, must exist when the proceeding is instituted. State ex rel. Jarrell v. Walker, 145 W.Va. 815, 117 S.E. 2d 509 (1960); State ex rel. Graney v. Simms, 144 W.Va. 72, 105 S.E.2d 886 (1958). Accord, State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E. 2d 367 (1969). And see, Haymond, J., dissenting, in State ex rel. Zickefoose v. West, 145 W.Va. 498, 538, 116 S.E.2d 398, supra.
When a candidate for county office in a primary election has received a regular certificate of nomination issued by the board of canvassers at the conclusion of a recount, a writ of mandamus will not issue at the behest of a mere claimant to that office based upon a charge of fraud in the conduct of the election. Fraud is a factual matter to be determined in the proper tribunal. A certificate of election is conclusive as to the result of the election until set aside or vacated in some manner authorized by law on direct attack and is not subject to collateral proceedings by mandamus. State ex rel. Thomas v. Wysong, supra; State ex rel. Porter v. Bivens & Dingess, supra.
The rule heretofore enunciated by this Court in several cases permitting the writ of mandamus to be employed as a means of determining the eligibility of a candidate for office and as articulated most recently in State ex rel. Zickefoose v. West, supra, is not directly reviewed by this decision. To the extent, however, that the Zickefoose case, supra; Adams v. Londeree, supra; and State ex rel. Pack v. Karnes, supra, imply that election mandamus may be employed to vindicate any right claimed by one aggrieved as a result of the conduct of an election or the procedures used therein, such decisions are expressly disapproved and overruled. We intend by this decision to indicate our firm belief that "election mandamus" may not be employed to try title to contested political offices, with the possible exception that we must recognize mandamus has been successfully used to find, in advance of the election, the disqualification of a particular candidate by reason of his pre-existing ineligibility.
To the extent that the case of State ex rel. Dodrell v. Payne, 87 W.Va. 306, 104 S.E. 733 (1920) indicates that a political party committee, pursuant to Code, 1931, 3-5-19, as amended, can make an extrajudicial determination on its own motion of a vacancy in office under circumstances excluding death of a regularly certified candidate or other disqualifications subsisting under the law, such case is expressly disapproved and hereby overruled.
Not having demonstrated to this Court a clear legal right to the relief sought nor a plain legal duty upon the person sought to be compelled to perform such duty, the rule heretofore issued in mandamus is discharged.
Writ denied.
CARRIGAN and KESSEL, JJ., participated and concurred in this decision but departed from the Court prior to the preparation of the opinion.
SPROUSE and NEELY, JJ., did not participate in the consideration or decision of this case.